# Griffith, Appellant, *v.* Eisenberg.

*Trusts and trustees—Husband and wife—Separate use—Investment with wife's money.*

Where a husband purchases real estate with his wife's money and takes the title in his own name, and subsequently conveys the property to a trustee for the sole and separate use of his wife and her heirs and assigns, and in the deed recites the fact that the property had been purchased with his wife's money, the wife takes an absolute estate in the land, which she has power to alienate.

Argued Feb. 27, 1906.   Appeal, No. 341, Jan. T., 1905, by plaintiffs, from judgment of C. P. Berks Co., March T., 1905, No. 53, on verdict for defendant in case of James M. Griffith, John H. Fow, attorney in fact for James M. Griffith, and John H. Fow v. Harry C. Eisenberg.   Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and POTTER, JJ.   Affirmed.

Proceedings under Act of June 10, 1893, P. L. 415, to quiet title.  Before ENDLICH, J.

From the record it appeared that the proceedings were instituted by H. C. Eisenberg and others in possession of certain lands in the city of Reading against the heirs at law of Rose Ann Griffith.  An issue was framed in which the heirs were made parties plaintiff and Eisenberg a party defendant as to the land claimed by Eisenberg.

The facts are stated in the opinion of the Supreme Court.

The court gave binding instructions for defendant.  Plaintiffs appealed.

*Error assigned* was in giving binding instructions for defendant.

*H. R. Green,* of *Green & Green,* with him *Henry Maltzberger* and *Fow & Anderson,* for appellants.—That a separate use trust was created will appear from an examination of Jamison v. Brady, 6 S. & R. 466 ; Heck v. Clippenger, 5 Pa. 385, and Snyder v. Snyder, 10 Pa. 423.

Mrs. Griffith had no power to convey, for a feme covert is, in respect to her separate estate, to be deemed a feme sole only to the extent of the power clearly given by the instrument by which the estate is settled, and has no right of disposition beyond it : Lancaster v. Dolan, 1 Rawle, 231.  She shall be deemed to have no power, but what is positively given or reserved to her : Thomas v. Folwell, 2 Whart. 11 ; Pullen v. Rianhard, 1 Whart. 514.

The words in the present deed " but be subject only to her own order or disposition " do not give power to convey : Cochran v. O'Hern, 4 W. & S. 95 ; West v. West, 10 S. & R. 445.

The married women's act of 1848 made no change in the law as to the wife's separate use trust : Penna. Co. v. Foster, 35 Pa. 134 ; Wright v. Brown, 44 Pa. 224.

*E. H. Deysher,* with him *Jefferson Snyder* and *C. H. Ruhl,* for appellee.—The first position assumed by defendant is that her money having purchased the property, David A. Griffith could not impress upon it a limitation without the consent of

Rose A. Griffith, the beneficial owner : Richardson v. Aiken, 104 Pa. 567 ; Haines v. Ellis, 24 Pa. 253.

The interpretation given to the act of 1848 in Haines v. Ellis, 24 Pa. 253, was questioned in The Pennsylvania Company v. Foster, 35 Pa. 134, decided in 1860, and was overruled in Wright v. Brown, 44 Pa. 224, decided in 1863.

At the time of the execution of the assignment by David A. Griffith to Matthias S. Richards, May 29, 1856, the decision of Haines v. Ellis had been read into the act of 1848 : Douglass v. Pike County, 101 U. S. 677 ; Geddes v. Brown, 5 Phila. 180 ; Menges v. Dentler, 33 Pa. 495.

OPINION BY MR. JUSTICE BROWN, May 7, 1906 :

Both parties to this issue claim title from the same source, Rose Ann Griffith, the mother of James M. Griffith, one of the appellants.   Before her marriage to David A. Griffith she was Rose Ann McGivern.   By the will of Charles Evans, admitted to probate on September 10, 1847, she was bequeathed the sum of $4,000 to be paid to her on attaining her majority.   At that time she was not quite fifteen years old.   She was married to David A. Griffith October 15, 1850, and attained her majority in December, 1853, when she became entitled to the legacy left her by Charles Evans.   On August 1, 1855, Isaac Eckert conveyed to David A. Griffith a tract of land in the city of Reading containing about five acres, of which the lot in controversy formed a part.   On May 29, 1856, David A. Griffith, by a writing annexed to the Eckert deed, conveyed the premises to Matthias S. Richards, in trust, " for the sole use and benefit of the said Rose Ann (intermarried with the said David A. Griffith) and to her heirs and assigns forever, and in such way and manner that no other person or persons, husband or otherwise, shall by no law, usage or custom whatever, have any right, title, claim or interest to the rents, issues or profits thereof, nor be in any way or manner liable for any debts or contract which may hereafter be created, but be subject only to her own order or disposition."   In the conveyance by Griffith to Richards there is a recital that the money which paid for the premises purchased from Eckert and wife had been furnished and provided out of the estate given to Rose Ann Griffith by Charles Evans, deceased.   Subsequently Mrs. Griffith and her husband conveyed

portions of the land to different grantees, among them John R. Miller, to whom on April 20, 1888, the lot in controversy was conveyed. He conveyed it to Wilson F. Bernhart, who in turn conveyed it to the appellee on November 5, 1890. Mrs. Griffith died February 25, 1899, and James M. Griffith, her son, and his grantee, the other appellant, now claim the property on the ground that it was held for the sole and separate use of his mother, and as she had no power to dispose of it, it descended to her heirs at law.

The learned trial judge directed a verdict for the defendant and discharged the rule for judgment for the plaintiffs non obstante veredicto, because he was of opinion, that there was not a separate use trust created for the wife, and, even if there was, her right at the time it was created was such as existed under the law as announced in Haines v. Ellis, 24 Pa. 253. The opinion in that case, delivered in 1855, held that real estate conveyed to a married women for her sole and separate use imposed no restriction upon her right to sell it. This was subsequently overruled by Wright v. Brown, 44 Pa. 224, but the court below was of opinion that the right of Mrs. Griffith was not affected by the latter case, decided after she had acquired a right recognized by the former.

David A. Griffith undoubtedly received the money, or a portion of it, that had been paid to his wife as a legatee of Charles Evans. He used it to pay for the property conveyed to him by Eckert, for he so declared in his deed to Richards. The preamble in that deed recites his use of his wife's money to pay for the property as the inducement to make the deed to Richards, and shows clearly that he had not received the money as a gift from his wife. Even if he had taken the deed in his own name, his conveyance to Richards, in trust for his wife, can be read only as an acknowledgment by him that he had taken and held it charged with accountability to his wife for her money, which had paid for the property, and in discharge of such accountability, and of an obligation which he felt was upon him to secure her money to her, he made the conveyance now alleged to have created only a separate use for her. The equitable title had been in the wife from the time the husband received the deed, and that he so understood it cannot be doubted, in the face of what appears in his deed to Richards. No voluntary

settlement was made by the husband in which he might, of course, have imposed conditions upon which the donee was to enjoy the estate, but the conveyance was made in recognition of a duty and obligation to make it. It was made in discharge of a debt to her, and the learned judge was correct in saying that he could "impose no shackles upon it without the consent of the grantee." She got simply what was her own, and her grantor could have imposed no conditions upon it in restraint of her right of alienation, unless she so consented. Richardson v. Aiken, 104 Pa. 567, is conclusive of this. In that case, a father, indebted to his married daughter in a certain sum which had been paid to him as her guardian, conveyed real estate to her for her separate use in consideration of his indebtedness to her, and it was held: "This was not in any sense a settlement. The grantor was the guardian of his daughter, and the conveyance shows upon its face that it was in consideration of the ward's money in his hands. Under such circumstances it was not in the power of the grantor to impose a separate use trust upon the grant, or any clog upon it whatever, without his daughter's consent. She was a purchaser for value." There is nothing in this record to show that Mrs. Griffith ever agreed to any conditions restricting her right to dispose of the real estate ; but, on the other hand, by selling it off from time to time, she seems clearly to have understood that she had the right to exercise absolute ownership over it and that the deed from her husband was intended to give her such a right. As the first reason of the learned trial judge for refusing judgment to the appellants was a correct one, we need not pass upon the second.

Judgment affirmed.