Citizens Deposit & Trust Company of Sharpsburg
*v.* Citizens Deposit & Trust Company of
Sharpsburg (et al., Appellant).

414

Argued May 1, 1939.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT,
JJ.

*Emerson Hazlett,* for appellant.

*D. S. Thomas,* with him *Campbell, Wick, Houck &
Thomas* and *Rosetta L. Skiles,* for appellee.

OPINION BY PARKER, J., July 13, 1939:

On the foreclosure of a mortgage on real estate the
premises sold for more than the debt, interest and costs,
so that there was a balance for distribution to the
owners of the land sold. The sheriff paid the balance
into court and there were two claimants to the fund.
The prime question involved is whether the evidence
established a resulting trust in favor of the appellant's
decedent. The court below held, we think correctly,
that it did not.

It was stipulated that the pertinent matters set forth
in a petition, answer and answer to new matter, where
not denied, were to be taken as true and additional
admitted facts were stated. We will state the sub-
stance of the matters so agreed upon.

On March 22, 1920, Elmer Harry Skiles consummated negotiations for the purchase of a house and lot and received a deed in his own name which was duly recorded. The exact amount of the consideration was not shown. On March 20, 1920, Elmer Harry Skiles had given to his father, Harry E. Skiles, this written receipt: "Sharpsburg, Pa. Mar. 20th, 1920. To Whom It May Concern. Received of my father, Harry E. Skiles, the sum of $3600, and $300 in Liberty Bonds, this amount paid on property at 124 Second Street, Aspinwall, Pa. Total $3900. Balance $600, paid by me. Signed (Elmer H. Skiles)". On the same date the son made his last will and testament wherein he bequeathed to his wife all his personal property and devised this real estate to his father.

On July 3, 1920, the son gave to his father this additional receipt: "Aspinwall, Pa. July 3rd, 1920. Received off Harry E. Skiles $180.00, which I paid to W T Colledge, for painting house. Signed (E. H. Skiles)". Possession was taken of the premises by Elmer Harry Skiles who "maintained said property as the home of his family" and "Harry E. Skiles lived in said home and paid Elmer H. Skiles a regular and agreed sum at regular intervals for his board and room, except during short periods when Harry E. Skiles was unemployed." The family of the son consisted of his wife, Rosetta Louise Skiles, and a daughter, Ruth.

The son died December 29, 1935 and his widow and daughter continued to occupy the premises until after the sheriff's sale. The father, following the death of his son, left the premises and resided with his daughter, Birdell E. Schwartz, at Tarentum until December 10, 1937, when he died. The father left a will wherein he appointed his daughter, the appellant, as executrix of his estate. Rosetta Louise Skiles gave notice, within the time required by law, of her election to take against the will of her husband, Elmer Harry Skiles. The premises were sold by the sheriff on the first Monday of

December, 1937. The widow, Rosetta Louise Skiles, as the survivor of her husband taking against the will of her husband, with one child surviving, claims one-half of the proceeds of the sale, conceding to her father-in-law's personal representative the other one-half. The personal representative of the father claims the entire proceeds, alleging that the facts show a resulting trust in his favor.

It is a general rule that where a transfer of property is made to one person and the purchase price is paid by another, a resulting trust arises in favor of the person by whom the purchase price is paid (*Lynch v. Cox*, 23 Pa. 265; *Ott v. Duffy*, 246 Pa. 211, 92 A. 201), but there is an equally well settled exception to that general rule, to-wit, that where "the transferee is a wife, child or other natural object of bounty of the person by whom the purchase price is paid, a resulting trust does not arise unless the latter manifests an intention that the transferee should not have the beneficial interest in the property": Restatement, Trusts, §442. The application of the exception is not determined by the closeness of the relationship, but by a consideration of certain aspects of the relationship, and an inquiry as to whether it is probable that the payor intended to make a gift to the transferee and whether the transferee was a natural object of the bounty of the payor. This principle is illustrated by many decisions in this jurisdiction.

Where a husband furnishes the purchase money and title is taken in the name of the wife, there is a presumption of a gift and not of a resulting trust (*Buckwalter Stove Co. v. Edmonds*, 283 Pa. 236, 239, 128 A. 835; *Gassner v. Gassner*, 280 Pa. 313, 316, 124 A. 483; *Earnest's Appeal*, 106 Pa. 310) ; but where the wife's money is used in the purchase of land and title is taken in the husband's name there is no presumption of a gift but rather of a resulting trust (*Ott v. Duffy*, supra; *Fishblate v. Fishblate*, 238 Pa. 450, 458, 86 A. 469; *Lloyd*

*v. Woods,* 176 Pa. 63, 66, 34 A. 926; *Griffith v. Eisenberg,* 215 Pa. 182, 64 A. 368).

Where a parent furnishes purchase money and title is taken in a child's name there is a presumption of a gift (*Wheeler v. Kidder,* 105 Pa. 270; *Phillips v. Gregg,* 10 Watts 158, 171; *Epstein v. Ratkosky,* 283 Pa. 168, 171, 129 A. 53); even where the mother furnishes the consideration (*Murphy v. Nathans,* 46 Pa. 508; *Neureuter v. Scheller,* 270 Pa. 80, 112 A. 776); and where purchase money is furnished by father-in-law and title taken in daughter-in-law's name (*Hiester v. Hiester,* 228 Pa. 102, 77 A. 419). On the other hand, where a child's money is used to purchase property and the title is taken in the father's name the presumption of a resulting trust arises: *Kauffman v. Kauffman,* 266 Pa. 270, 276, 109 A. 640; *O'Neill v. O'Neill,* 227 Pa. 334, 76 A. 26.

We, therefore, start with the presumption as stated by Mr. Justice SCHAFFER in *Epstein v. Ratkosky,* supra (p. 171): "Although a father has made payment of the purchase price, if title is made in the name of a child, there is a presumption of a gift......This, however, is only a presumption and even in cases involving husband and wife, father and child, or other closely related persons, whether the transaction was a gift is a matter of intention which is to be ascertained from the attending circumstances." Also see Restatement, Trusts, §443. As there was here no controversy as to the facts the matter to be decided is a question of law.

The appellant first relies on the written receipt dated March 20, 1920, and the son's will of the same date. Although the receipt is an acknowledgment of the amount which the son received from his father and the parties were careful to have the declaration in writing, there is not a suggestion in the paper that the son was to hold the real estate in trust for his father. Since they made plain the source of a part of the con-

sideration paid, it is fair to assume that if it was not a gift they would have stated that the real estate was to be held for the father's benefit. In addition, no extraneous circumstances are shown indicating any reason for not taking the title in the name of the father if he was to be the equitable owner. The circumstance that the son provided for his father in his will is of little assistance as conflicting inferences may be deduced from that fact. The fact that the father knew of the will and that the will contained the provision that it did might form the basis for a fair inference that the son was the real owner of the premises.

The appellant also refers to the fact that the father lived with the son and his family in the premises purchased until the death of the son. However, it was stipulated that the father paid his son during this time not only for his board, but also for his room. Such payments were inconsistent with a contention that the father was in actual possession and thereby exhibited his equitable ownership of the property. Even under the appellant's contention the son and his family also occupied the premises. As was said by Mr. Chief Justice MOSCHZISKER in *Gassner v. Gassner,* supra (p. 316) : "The fact that the premises in question were jointly occupied by plaintiff and defendant has no particular significance against the latter, for, under such circumstances, the presumption is that the occupancy was in subordination to the record title: *Jones v. Bland,* 112 Pa. 176, 182."

Although the receipt of July 3, 1920 shows a further advancement to the son of $180 for painting the house, it was stipulated that Elmer Harry Skiles maintained the property.

While there is some confusion in the cases as to the degree of proof required to overcome the presumption with which we have been dealing, we follow the statement in *Epstein v. Ratkosky,* supra (p. 172) : "The evidence in rebuttal of the presumption must be directly

to the point, but, if it is, though contradicted, the weight of the evidence which satisfies the conscience of the chancellor is sufficient." There was here no conflict as the facts were all agreed upon. We do not see how the chancellor could have come to any other conclusion than he did for the circumstances agreed upon tended rather to support than to rebut the presumption. This leaves no ground for disregarding the presumption of a gift.

In addition to what we have said there is the matter of laches and the Act of April 22, 1856, P. L. 532, §6 (12 PS §83) which provides that "no right of entry shall accrue, or action be maintained......to enforce, any implied or resulting trust as to realty, but within five years after......such equity or trust accrued, with the right of entry." The title was taken in the name of the son with the knowledge of the father in 1920 and this claim was not made until the death of the father seventeen years later. The Act of 1856 is a statute of repose (*Frost v. Bush,* 195 Pa. 544, 46 A. 80) and applies to an alleged resulting trust arising from the purchase of land with the money of another (*Reed v. Mellor,* 122 Pa. 635, 16 A. 80; *Silliman v. Haas,* 151 Pa. 52, 25 A. 72) and an action is barred after the expiration of five years from the time when it accrued (*Huffnagle v. Blackburn,* 137 Pa. 633, 20 A. 869).

The only matter relied upon to toll the statute is the alleged joint possession of the father and son. As we have shown this claim is without merit since the father paid the son not only for his board but for his room and no fact is shown which would warrant a disregard of the name in which the record title was placed. The claim was not made until after the death of the son after a lapse of many years and was not at least legally asserted by the father before his death.

The appellant also claims that the estate which she represents is entitled to an allowance for one-half of the rental value of the property from the date of the

death of the son until the sheriff's sale. The Act of June 24, 1895, P. L. 237, §1 (68 PS §101) has changed the common law rule that there could be no recovery by one tenant in common out of possession from his co-tenant in possession of a share of the rental value of the property without proof of an agreement to pay the same. "But exclusive possession is a prerequisite to the right of the tenant in common not in possession to recover from the tenant in possession his or her proportionate share of the rental value of the real estate for the time such real estate has been in the possession of the other": *Hoog v. Diehl*, 134 Pa. Superior Ct. 14, 19, 3 A. 2d 187. There is not the slightest evidence that the father was excluded from possession of the premises as a tenant in common. While he left the premises some time after the death of his son, the exact time does not appear and the fair inference under all the evidence is that the widow remained in the premises to protect them until the sheriff's sale was completed. As we pointed out in the Hoog case and also in *Peterson v. McNeely*, 125 Pa. Superior Ct. 55, 60, 189 A. 765, it must appear, before liability for rent appears that the possession was exclusive. There is not the slightest evidence to show an exclusion of the father from the premises.

It will also be noted that while special provision is made by the Act of 1895 for the adjustment of rentals among tenants in common in partition proceedings, this is not such a proceeding and we have serious doubt of the right of the court under the pleadings and the form of this action to adjust the matter of rental if any valid claim exists.

The order of the court below is affirmed at the costs of the appellant.