## N. P. REED v. L. P. MELLOR.

ERROR TO THE COURT OF COMMON PLEAS OF BUTLER COUNTY.

Argued October 18, 1888—Decided November 5, 1888.

(*a*) By the express words of a will, proved in 1860, land was devised to the executor with absolute direction to sell and pay the proceeds to the testator's widow " to be held by her as guardian of our children and used in such judicious manner as she may deem most beneficial to herself and said children."

(*b*) The will also appointed the widow sole guardian of the children, and authorized the executor to sell " such portions of my real estate as he may deem it most to the interest of my said estate, . . . . . on terms of four equal annual payments, with the usual interest.

(*c*) In 1861, in consideration of one dollar and the fact that the widow under said will was the " sole devisee, except certain exceptions therein contained," the executor conveyed the land to the widow, who in 1877, all the testator's children then being of age, conveyed to one of them, a son, who had gone into possession in 1873 and made valuable improvements.

1. In such case the deed from the executor vested the legal title in the widow, and though under the will she held the land in trust, it was as personalty only, and she was free to dispose of it as she pleased, accounting at the proper time for its proceeds or its value.

2. The deed from the widow to her son was a conveyance of the legal title to him, and his subsequent mortgage or conveyance thereof passed to his grantee a title unaffected by the trust in favor of the children.

3. The parties in interest might have elected to forego a sale under the provisions of the will, and to take the land in lieu of the proceeds, but this right could not be asserted after the title was conveyed to the son and his subsequent mortgage thereof.*

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and HAND, JJ.; WILLIAMS, J., absent.

No. 223 October Term 1888, Sup. Ct.; court below, No. 30 June Term 1886, C. P.

On March 18, 1886, an action of ejectment was brought by Louisa P. Mellor against Nelson P. Reed, to recover a lot of ground on Main street in the borough of Butler. The defendant pleaded, not guilty.

---

* See Mellon v. Reed, 123 Pa. 1.

Decision of Court below.

At the trial on April 6, 1887, the evidence was closed on both sides, when the parties by a paper filed agreed to dispense with a trial by jury, and to submit the cause to the decision of the court upon the evidence taken, under the provisions of the act of April 22, 1874, P. L. 109.

On June 3, 1887, the court, McMICHAEL, J., filed the following decision:

The facts of the case are found as follows:

Charles C. Sullivan, Esq., was in his lifetime, and at the time of his death, seised of several tracts and parcels of land, among which was a piece of land containing about two and three fourths acres, situate in the borough of Butler, in Butler county, Pa. This piece includes the lot now in controversy. On January 29, 1860, Charles C. Sullivan made his last will and testament, wherein and whereby, amongst other things, he devised and bequeathed as follows: "All my estate, real and personal, wherewith it has pleased God to bless me, I hereby will and bequeath to my executor, hereinafter named, Charles McCandless, to hold the same and to convert the same, as soon as practicable, into money, as hereinafter described, and then pay the proceeds over to my wife, Susan Catharine, to be held by her as guardian of our children, and used in such judicious manner as she may deem most beneficial to herself and said children. And I do hereby appoint my said wife, Susan Catharine Sullivan, sole guardian of our five children, having full confidence she will take good care of their interests in this world, and educate them carefully in reading and studying the Scriptures of Truth, and in following their precepts all their lives. I further do authorize my said executor to sell and make deeds for all such portions of my real estate as he may deem it most to the interest of my said estate, to make sale of the same on terms of four equal annual payments, with the usual interest."

Some small legacies were bequeathed to other persons, which are not important to be noticed in this case, and Charles McCandless was appointed executor. On March 3, 1860, after the death of Mr. Sullivan, this will was duly probated, and letters testamentary thereon were granted to the executor named therein.

The testator left surviving him his widow, Susan C. Sullivan,

and five children, whose names, with the dates of their births, as near as the evidence shows those dates, are as follows: Charles A., born in June, 1846; Moses, born in November, 1847; Louisa, born in May, 1849; Josephine, born in May, 1852; and Matilda, born in November, 1853. All these survivors are still living.

On December 11, 1861, Charles McCandless, as executor of the will, made a deed to Mrs. Susan C. Sullivan, individually, for all the lands of which the testator died seised, wherever located in the county of Butler, and which at the time of making the deed had not been sold by the executor, and also for all the land which the executor had contracted to sell, but for which he had not then made deeds. The consideration mentioned in this deed is "the sum of one dollar, and the further consideration that by the last will and testament of said Charles C. Sullivan, deceased, she is the sole devisee, except certain exceptions therein contained." There were a number of pieces of land, houses and lots which had not then been sold by the executor, and which were therefore included in the general description in this deed, and intended to be conveyed by it. Among them was the piece containing two and three fourths acres, of which the lot in suit is a part. It does not appear that Charles McCandless did anything as executor after this deed was made. The object appears to have been to pass to Mrs. Sullivan the entire estate as it then was, under the belief or supposition that she was personally entitled to it under the will, and that the executor should perform no further duties.

Since the making of this deed Mrs. Sullivan has sold or conveyed away all the real estate, which was conveyed or intended to be conveyed to her by it. She testifies that she educated her children by means of the proceeds, but did not pay over any of the proceeds to them.

In 1873, Charles A. Sullivan, the eldest son of the testator, took possession of the lot in suit, and before October, 1874, built on it a house, barn and outbuildings, at a cost of between $10,000 and $12,000. The evidence does not show what the contract or arrangement was under which he took possession, but it is evident that he understood that he was to be the owner of it. In October, 1874, just after the house was finished, he moved into it and occupied it with his family as his indi-

vidual residence from that time until April, 1886. On June 7, 1877, his mother, Mrs. Susan C. Sullivan, made a deed to him for this lot, on which he then resided. The consideration mentioned in this deed is $2,700, but there was in fact no money paid by Charles to his mother for the lot.

While Charles A. Sullivan was building the house on this lot, the other four children of the testator were living at home with their mother, in Butler, and knew the fact that he was so building. They knew of his residing on this property, and the two older ones, Moses and Louisa, and probably all four of them, were at home at the time the deed was made by Mrs. Sullivan to Charles, though they were not consulted about the making of it. At the time this deed was made they were all of age. Matilda, the youngest, became of age in November, 1874.

On June 11, 1877, Charles A. Sullivan executed a mortgage of this lot to Andrew C. Taggart, which was recorded the same day. It was given to secure the payment of $5,600 in three years after date, with interest, payable semi-annually. This mortgage was on June 12, 1877, assigned by Andrew C. Taggart to Louisa P. Mellor, the plaintiff. At the time this mortgage was given and the money received for which it was given, Moses Sullivan, one of the children of Charles C. Sullivan, attended to the matter for his brother, Charles A. Sullivan, received the draft for the money borrowed, knew of the transaction and was an attesting witness to the assignment of the mortgage by Mr. Taggart to the plaintiff.

A scire facias was issued on this mortgage to No. 60 June Term 1883, and on December 22, 1885, a verdict was rendered in favor of the plaintiff, and on January 8, 1886, a judgment was entered in her favor in the case for $6,623.17. A levari facias was issued on this judgment, and on March 1, 1886, the plaintiff purchased the lot in suit, at the sheriff's sale under this writ, for $6,500, and received therefor a sheriff's deed, duly acknowledged on March 3, 1886.

This mortgage when it was recorded was the first lien on this lot against Charles A. Sullivan.

There was a judgment entered by the Butler Savings Bank against Charles A. Sullivan, Moses Sullivan and Susan C. Sullivan, in the Court of Common Pleas of Butler county, on Feb-

ruary 20, 1883, for $3,127. On this judgment execution was issued, under which the sheriff sold the property in suit to Nelson P. Reed, the defendant, on September 7, 1885, for $500, and a sheriff's deed was duly acknowledged and delivered to the defendant, on September 9, 1885. On the same day a quit-claim deed was executed by the several children of Charles C. Sullivan, deceased, including Charles A. Sullivan, for the lot in suit, to Nelson P. Reed, the defendant. This deed was signed by Matilda Duncan (nee Sullivan), but not by her husband, who is living, as it appears.

There is no evidence that Andrew C. Taggart or Louisa P. Mellor had any notice or knowledge at the time the money was loaned to Charles A. Sullivan, and the mortgage before mentioned was taken, that he had not paid to his mother any part of the $2,700 consideration money mentioned in the deed from his mother to him. That deed and the record of it contained a receipt by the grantor for the purchase money in full. It was recorded June 6, 1877.

It is admitted that the defendant is now in possession of the property in dispute.

These are all the facts which are proved by the evidence and believed to be pertinent to the issue. Do they entitle the plaintiff to recover? No doubt the will of Charles C. Sullivan vested the legal title to his real estate in Charles McCandless, his executor, and so far as the beneficiaries under his will are concerned, it worked an equitable conversion of all his realty into personalty. To this both parties agree; and here their agreement ends.

The plaintiff claims that under the will of Charles C. Sullivan, his wife became the absolute owner in her own right of the proceeds of his entire estate which remained after paying debts, funeral expenses, expenses of administration and other legacies; and, having taken from the executor a deed for the lands instead of the proceeds, she acquired thereby a title to the lands in her own right, as a purchaser, and had full power to convey them, and hence her deed to Charles A. Sullivan gave him a perfect title, which he could, and did, mortgage. This is the substance of plaintiff's fourth point. On the other hand, the defendant claims that Mrs. Sullivan was entitled to

the proceeds of her husband's estate only as guardian of her children, and not in her own right; and, if she could and did take any title to this lot by means of the deed from Charles McCandless, she took such title as guardian, and by virtue thereof the equitable title to the lot became vested at once in her wards; and, they then becoming and being the owners of the land, Mrs. Sullivan could not and did not, by her deed to Charles A. Sullivan, vest the title in him. This is the substance of defendant's second, fifth and sixth points.

I am not able to agree entirely to either of these propositions. The plaintiff's claim is based upon the position that a testamentary guardian is not a guardian of the estates of the minors, but only of their persons; and that Mrs. Sullivan being guardian only of the persons of her children, could not receive their estates as guardian, and hence the testator in directing that the money should be paid to her could not have meant, to her as guardian of the estates of his children, and therefore must have meant her individually. To this there are two complete answers. The first is the language of the will itself. The direction is to "pay the proceeds over to my wife, Susan Catharine, to be held by her as guardian of our children." It is evident from this language, even if it be taken in connection with what immediately follows in the will, that the testator was not making provision for his wife alone, but for his children. It is immaterial that she is called "guardian." She might have been called trustee, protector, curator, or any other name which would have expressed the thought that she was to hold for their use. That is the thought which he most certainly intended to express; and, if it be conceded that she was not and could not be the guardian, in its technical sense, of her children, yet it remains evident that the money was to be held by her for the use of her children. That being evident, the money when paid to her, could not become her own absolutely, but should have been held for the children under the other directions in the will. The second answer is that a testamentary guardian is a guardian of the estate of the ward, devised or bequeathed by that testator. The 8th and 9th sections of the statute of 12 Charles II., c. 24, was reported by the judges to be in force in Pennsylvania. The 9th section of that statute has not been supplied or repealed. It enacts.

" that such person or persons to whom the custody of such child or children hath been or shall be so disposed or devised, shall and may take into his or their custody, to the use of such child or children, the profits of all lands, tenements and hereditaments of such child or children; and also the custody, tuition and management of the goods, chattels and personal estate of such child or children." See this statute and the decisions under it in Robert's Digest, 312* to 315*. This is the recognized law in Pennsylvania: Hollingsworth's Appeal, 51 Pa. 521.

The conclusion then is, that Mrs. Sullivan was not entitled to receive in her own right the proceeds of the sale of this real estate, and hence that she had not the right to take the title in her own name and sell it again for her own use. But it does not follow that when she took the deed from Charles McCandless as executor, the equitable title to the lands vested at once in her children. There is no evidence, and no claim, that when the conveyance was made to her there was any actual purpose on her part or on the part of the executor to defraud the children. The deed was made under the mistaken belief that she was entitled to the proceeds of the sale of the land in her own right, and hence that she could take the land in lieu of its proceeds. If there was fraud in the transaction it was a legal fraud. But whether legal or actual, the result is perhaps not changed by that fact. She had a right to the proceeds of the sale of this land, to be " used in such judicious manner as she may deem most beneficial to herself and her children." Now, it might well be that she might deem that part of the fund could be most judiciously used by investing it in real estate, not for the purpose of acquiring the title to the land for her children, instead of the money, but as an investment, the land to be again sold and the money obtained for the children. I do not mean that she intended to do that, but only that she might have intended it. Our inquiry now is, whether she could invest the money in land, by a purchase, or take land instead of the money, without the equitable title to the land becoming vested in the children. The fact that she took land from the executor instead of the money, would not have any other effect in this case than would have resulted had she received from him the money which she believed to be her own and with it purchased land. If she had done that—had used money which in

fact belonged to her wards in purchasing land in her own name and then had learned that it was a misappropriation of the money, it is difficult to see why she could not have resold the land, repossessed herself of the money and thereby righted the wrong she had done.

When a trustee purposely buys land with a trust fund which he has no right to use in such a way, and thereby commits an intentional fraud, it does not follow that the title to the land so bought vests, as a matter of law, in the cestui que trust. It is true that if he be sui juris he may elect to take the land, but he may also elect not to take it, and in that case the title remains in the trustee. It is not the fact of the purchase by the trustee fraudulently, but the fact of the election by the cestui que trust that gives him the title. His right is to have the money, and he cannot be deprived of that right, or forced to take land in lieu of the money without his consent, and he cannot have both. That is, he cannot take the land and also compel the trustee to pay him the money. When one pays money for the purpose of buying land, and the title is taken to another, a trust always results, because it is presumed that he who purposely pays for the land intends to own it. But that is not our case. Here the trustee took a conveyance of the land in her own name instead of the trust fund, and there could not be, properly speaking, a resulting trust, but a constructive trust after the cestui que trust should elect to make it such. Between these there is a substantial difference. " In the former, the trustee will be compelled to execute the trust by a conveyance of the land; in the latter, chancery will raise the money out of the land by a sale of the whole or such part of it as may be necessary to produce the sum withdrawn from the fund." See opinion of GIBSON, J., in Wallace v. Duffield, 2 S. & R. 529. If chancery would raise the money improperly invested by a sale of the land, can it be that the trustee would not be permitted to do the very same thing, particularly if the sale be made before the cestui que trust elects, and hence before the title vests in him ?

If it be true that the title to all this land covered by the deed from the executor to Mrs. Sullivan vested, then, in the children, then upon the death of one of them the whole course of descent of the share of the one so dying would have been changed,

without the consent of the parties interested. Other arguments are not lacking, but these are enough to illustrate the line of reasoning which has led me to the conclusion, that no title vested in the children by mere operation of law, and that eo instanti Mrs. Sullivan took the legal title from the executor, without any act or election on their part, she, as holder of the legal title, could sell the lot and pass a good title to the purchaser, if she sold it for a full valuable consideration, and thus obtain and have the very money which it was her duty to hold and use for the benefit of herself and her children. This conclusion has nothing to do with the question of the liability of the guardian or of the executor to the children, in case they were injured by the transaction.

Having concluded that Mrs. Sullivan had acquired the title to, and could sell the lot in controversy, there was no obstacle in the way of her selling to her son. If he had paid full value for the lot, as much as the executor could have realized had he sold it, then the trust fund would not have been diminished, no one would have had cause to complain, and his title would have been perfect. Taking it, as he did, without paying anything, he took it, of course, subject to all the claims which might have been made against it in his mother's hands. But the fact that he paid nothing cannot affect the plaintiff, because the mortgagee had no notice or knowledge of that fact. There is no evidence, or allegation, that either the mortgagee or the plaintiff knew he had not paid full value. The deed and the record of it showed the consideration paid, and it is not pretended that the consideration expressed in the deed and receipted for, was not the full value of the lot at the time Charles A. Sullivan took possession of it. The trust which might have attached to the title as held by him, because of the want of consideration paid, was a secret one and cannot affect the mortgagee without notice of the trust brought home to him. He and the plaintiff under him stand in the position of purchasers for value.

It follows from this that the sheriff's sale under the mortgage vested in the plaintiff the title which Charles A. Sullivan had, free from the secret trust to which it might have been subject had he continued to own it.

But if these conclusions are all wrong, the case has another aspect, which was not mentioned on the argument, which appears to me to be decisive of the rights of the parties. It is that the limitation contained in the sixth section of the act of April 22, 1856, defeats the defendant's case. By that section it is enacted that "no right of entry shall accrue or action be maintained . . . . . to enforce any implied or resulting trust, as to realty, but within five years after . . . . . such equity or trust accrued with right of entry, unless such . . . . . trust shall have been acknowledged by writing to subsist, by the party to be charged therewith within the same period."

The defence is purely an equitable one, and is based on an alleged implied or resulting trust. The plaintiff shows a title which on its face is complete. The defendant says it is defective, because affected by a trust arising from the facts, that the children of Charles C. Sullivan were entitled to the proceeds of the sale of this lot, and that the lot was conveyed to the person who was their guardian, instead of paying to her the money for which it should have been sold, which trust adhered to the lot and the title when it was transferred to Charles A. Sullivan, and still adheres to it; that the defendant is now, by means of the quit-claim deed, the owner of that trust, and the plaintiff cannot recover; that is to say, that the children of Charles C. Sullivan owned the lot, and the defendant now owns it, because their money bought it. Such a trust is within the operation of the statute quoted: Roy v. Townsend, 78 Pa. 329; McNinch v. Trego, 73 Pa. 52; Clark v. Trindle, 52 Pa. 492; Barrett v. Bamber, 81 Pa. 247.

Now let it be conceded that the trust existed as is claimed. Charles A. Sullivan went into possession of the lot in 1873. At that time all the cestuis que trust were of age, except Matilda, and she became of age in November, 1874. They all lived in Butler, with their mother, when Charles was building his house. That was their home when Charles moved into his house, and also when he got his deed from his mother on April 7, 1877. The deeds were on record in Butler county. Moses Sullivan, an attorney, had actual knowledge of all this and assisted in securing the loan to his brother Charles and in having the mortgage given to secure it. The other children knew, because they must have known, that Charles was occu-

pying the premises as his own. If they did not know all about the facts, that their mother had taken the title from the executor of their father's will, and had made a deed to Charles without consideration, they could by reasonable diligence have learned these facts before the beginning of the year, 1880. Yet no action is commenced, nothing is done, until September 9, 1883, almost eleven years after the youngest child became of age. Then a quit-claim deed was made to the defendant. Before that deed was made the statute had perfected the title in Charles A. Sullivan, and his mortgagee had a right, and under him the plaintiff has a right, not only to all the title which he had when the mortgage was given, but to all the title which he subsequently acquired. The quit-claim deed did not release or assure any title or claim to the defendant, because at the time the releasors had no valid title or claim to be released. The fact that Charles A. Sullivan signed that deed can have no effect. He could not by that act prejudice the title he had granted by the mortgage. Neither can the fact that he appears to have surrendered the possession to the defendant on April 1, 1886, as against the then purchaser under the mortgage, avail the defendant. Such acts tend only to raise a suspicion of bad faith on his part and on the part of the defendant towards the plaintiff.

The statute of 1856 is equally effective to prevent the enforcement of a trust, whether the party seeking to enforce it be plaintiff or defendant. That point is expressly decided in McNinch v. Trego, 73 Pa. 58.

If neither of the positions which I have considered were of avail to the plaintiff, still she would be entitled to recover at least the undivided two fifths of the lot in suit, because Mrs. Sullivan by her deed to Charles, and he by his mortgage to Taggart, conveyed all the estate either legal or equitable which they had in the premises, and the plaintiff now has that estate ; and because Moses Sullivan is estopped by his knowledge and active assistance in securing the loan and procuring the mortgage to be given, from setting up any claim to the premises as against the mortgage.

The several points submitted on behalf of the defendant are specifically answered as follows :

\* \* \* \* \* \* \* \*

4. The deed of Charles McCandless to Mrs. Sullivan, if intended to constitute her trustee or executrix in his stead, is void for want of power; if to invest her personally with the title, she is not competent to take title in her own right to the children's—her ward's estate, adverse to the prejudice of them; such an act is against the policy of the law, and void at the election or option of the wards.

Answer: The fourth point is affirmed as good law, but it is not applicable to this case. The children did not have an estate in the land.[1]

5. If the court find that Mrs. Sullivan could, and did take title to the real estate from Charles McCandless, the executor, she could only take it instead of its "proceeds," and in the same right and capacity, to wit: as guardian; and then she could not divest the title of her wards to such real estate without authority of, or approval by the Orphans' Court.

Answer: The fifth point is refused. The title did not become vested in the wards ipso facto, by means of the deed to the guardian.[2]

6. That the deed of Susan C. Sullivan to Charles A. Sullivan conveyed no title to him which bound its owners, the wards, and they, upon reaching full age, could refuse to ratify such deed and disaffirm it by themselves making deed to N. P. Reed, as they did, and therefore such deed would become of no legal force or effect; if not to all, at least to all except C. A. Sullivan's grantee.

Answer: The sixth point is refused.[3]

7. The court is requested to find the following facts:

The deed of Charles McCandless to Mrs. Susan Sullivan was not executed pursuant to the directions of the will, nor to convert the real estate into money; that no money was paid or to be paid; that it was without consideration; that it was made merely to enable the executor to retire from the trust, and not to put the title beyond the reach of the children, nor to defraud them, nor prejudice their rights.

Answer: The seventh point, so far as it asks for findings of facts, is answered by the findings herein contained.[4]

8. That C. A. Sullivan paid nothing as consideration to Mrs. Susan Sullivan for his deed; that the other children did not

induce the conveyance, nor approve, ratify or adopt it, but on the contrary, repudiate and disavow it.

Answer: The eighth point is not a correct statement of fact so far as Moses Sullivan is concerned. As to the other children, their only act of disavowal was their deed to defendant. So far as the evidence shows, all their other conduct was by way of approval.[5]

10. That the defendant is not required to show good title in himself, but can demand that the plaintiff show title in herself, and the plaintiff has not shown title to enable her to recover more (if that) than the one fifth undivided part.

Answer: The tenth point is refused.[6]

11. That the plaintiff is not an innocent mortgagee nor purchaser, the record being sufficient to put her upon inquiry as to all the facts material to the issue.

Answer: The eleventh point is refused.[7]

15. Under the facts and law the verdict must be in favor of the defendant; if not generally, at any rate for the four fifths of the land in suit.

Answer: The fifteenth point is refused.[8]

16. Precatory words " desire," " will and desire," " request," " wish and request," " intent," " recommend," " hope," " in the fullest confidence," " not doubting," " trusting and wholly confiding," are alone sufficient to raise a trust.

Answer: The sixteenth point need not be answered. Whether the words mentioned will raise a trust depends on their connection in the context.[9]

The conclusion of the court is that the plaintiff is entitled to recover the land described in the præcipe filed in this case, with costs.

If no exceptions are filed to this decision within thirty days after notice of the filing of the same is given by the prothonotary to the parties or their attorneys, agreeably to law, then the prothonotary is directed to enter judgment in favor of the plaintiff and against the defendant for the land described in the præcipe filed, with costs of suit.

To the foregoing decision the defendant filed various exceptions which, on October 1, 1887, were overruled by the court, and it was ordered that judgment be entered in favor of the

plaintiff for the parcel of ground described in the writ, with costs. Thereupon the defendant took this writ, and assigned as error:

1–9. The answers to the defendant's points.[1 to 9]

*Mr. John M. Thompson* (with him *Mr. Charles McCandless*), for the plaintiff in error:

The real question, and almost the only one, is, did the deed of Charles McCandless, the executor, vest in Mrs. Sullivan and in her own right, a title adverse to and independent of her wards?

1. It must be borne in mind that Mrs. Sullivan accepted under the will and was at the time of the conveyance the guardian of all her children, who were then minors. Had she not borne a fiduciary relation to them, she could have purchased and taken title from the executor, as a stranger might, that is, for value. But she did not purchase for money, nor agree to pay money. The land by virtue of the deed was the property of the children, not, however, as the court held, by virtue of a resulting trust, because the children did not pay the executor for the land, nor was their money used to pay for it. The legal title was in Charles McCandless, and his was an express trust, yet not more so than the title he conveyed to Mrs. Sullivan; one held as executor, the other as guardian.

2. The will made an equitable conversion of the real estate: Roland v. Miller, 100 Pa. 47; Dundas's Appeal, 64 Pa. 325; Bleight v. Banks, 10 Pa. 131; and yet even that conversion might be avoided by all parties treating the devise as realty and waiving the sale which the will authorized. The executor did not sell for the purpose of converting into money; he received no money. The manifest purpose of his deed was to divest himself and to invest the guardian with the title to the land, in lieu of the proceeds contemplated by the will; in short, to constitute the guardian, as guardian, the owner; no more, no less. Logically, Mrs. Sullivan did not take a title adverse to her wards. It does not follow that because the executor might have sold and conveyed the real estate, that Mrs. Sullivan, if she took title as guardian, could sell without an order of the Orphans' Court. She did all she did without

either asking or receiving authority from the court, a fact also found in the chain of title, and of which the plaintiff is charged with notice.

3. One of several devisees cannot work a conversion of land, against the will of the others: Willing v. Peters, 7 Pa. 287; Evans's Appeal, 63 Pa. 183. But that all parties in interest may elect to take the land and forego a sale under the will, is also true: Beatty v. Byers, 18 Pa. 105; Evans's App., 63 Pa. 183. The deeds of the several devisees to the defendant, on September 9, 1885, was an unequivocal and declared act for that purpose. The devisees, through their vendee, the defendant, are now in actual possession of the land in suit. What did the plaintiff show to defeat this title? Charles A. Sullivan had not a title which he could mortgage, and this is found in and arises directly out of the chain of title, which is legal notice thereof to mortgagees and purchasers of his title.

*Mr. J. M. Kirker* (with him *Mr. McJunkin* and *Mr. Galbreath*), for the defendant in error:

1. That Mrs. Sullivan, under the deed of the executor to her, intended and did accept the land instead of the proceeds, is clear beyond controversy. The deed itself in effect so says on its face. She either took the title to the land in her own right and to her own use, under the law as determined in Pennock's Est., 20 Pa. 268; Paisley's App., 70 Pa. 153; Follweiler's App., 102 Pa. 581, and kindred cases, or, if she took it as guardian, she took it as personalty with power to convey by good title. In either case, her deed to Charles A. Sullivan vested in him the title in fee: Oeslager v. Fisher, 2 Pa. 467; Billington's App., 3 R. 48, 56; Davis's App., 60 Pa. 118. It is therefore not necessary to establish that Mrs. Sullivan, at the time she conveyed to Charles A. Sullivan, must have held a title in her own right adverse to and independent of her wards.

2. Mrs. Sullivan had full power to vest in her grantee a good title, even if she then held as guardian for her children, at any time before their election to take the land instead of the proceeds. The trust, as guardian for the children, was a trust for herself representing the children, and gave her full power to convey title. Moreover, the executor, by his deed to Mrs. Sullivan, is estopped from claiming title by alleging his

own breach of trust to the prejudice of the plaintiff, a bona fide purchaser for value: Weaver v. Lynch, 25 Pa. 449; Leedom v. Lombaert, 80 Pa. 381, 391. Mrs. Sullivan is estopped from claiming title for the same reason.

OPINION, MR. JUSTICE CLARK:

It is conceded on all hands that by the terms of the last will and testament of Charles C. Sullivan, deceased, there was an equitable conversion of the realty into personalty. The legal title was in the executor, not by any mere implication, but by the express words of the will, and the direction to sell was positive and absolute; indeed, the declared and only purpose of the devise was that the executor should "convert the same as soon as practicable into money," and "pay the proceeds" to his wife, Susan C. Sullivan, "to be held by her as guardian of the children, and to use it in such judicious manner as she may deem most beneficial to herself and said children." As the land was directed to be converted into money and the widow was entitled to the "proceeds" only, it is plain that neither the widow nor the children at the outset had any interest in the land which would support an ejectment.

It is equally plain that as the executor had undoubted power to sell, he might sell to anybody. The widow had as much right to buy as the executor had to sell, and we can see no good reason why a deed from the executor would not invest her with the legal title. To this it is objected, that the executor by the will was directed to sell the lands as he might deem it most beneficial to the interest of the estate, "on terms of four equal annual payments, with the usual interest," whereas by his deed he conveyed to the widow for a nominal consideration only. But it will be observed that the sale was in consideration of the sum of one dollar, and that "by the last will and testament of the said Charles C. Sullivan, deceased, she is the sole devisee," etc. The property was placed in the same hands which were entitled to receive the proceeds. The land was not given away, it was accepted by Mrs. Sullivan instead of the money; not as land, however, but as money. The land, having been directed to be converted into personalty, must be regarded and treated as personalty: it was certainly not in the widow's power by any act or agreement of hers to

convert it into realty: Willing v. Peters, 7 Pa. 287; Evans's App., 63 Pa. 183. In the widow's hands, as respects the trust, it was personalty still, and the children had as yet acquired no right which would support an ejectment. If the executor had sold the land to Mrs. Sullivan at its actual value and received the money, she would have been entitled to receive it back again, and after going through this routine the condition of the parties would not be different in any respect from what it is now. This mode of executing the power was not perhaps in strict compliance with the directions of the will, but the same strictness has never been required in the execution of a power to sell, as is required in the execution of a power to appoint. Hacker's App., 121 Pa. 192, is therefore not in point. If McCandless had conveyed to Mrs. Sullivan for full value paid in hand, no one would doubt the valid execution of the power; and practically, this was just what was done, for as we have said, the condition of the parties would not have been changed if that had been done. The executor may have supposed, and doubtless did suppose, this mode of sale "most to the interest of the estate," whilst the widow, who was solely entitled to the money, doubtless deemed this use of it "a judicious" one, and "most beneficial to herself and children." And if they, acting in good faith, agreed as to this, there was no one to take any exception to the transaction.

At a public sale of this land by the executor, no one would question the widow's right to buy, representing her interest and the interest of the children, in order to prevent a sacrifice of the property; and, if she might buy at a public sale, there is no good reason why she might not take the title, for a like purpose, at a private sale. A purchase of the property, under such circumstances, could work no conversion, so as to prevent the widow from disposing of it by sale and conveyance in due form: Billington's App., 3 R. 47; Oeslager v. Fisher, 2 Pa. 467; Johnson v. Bliss, 11 W. N. 293.

The legal title was thus vested in Mrs. Sullivan, who held it subject to the trust, as to which, however, it was personalty only. The children having no interest in the land as such, the mother was free to dispose of it as she chose, accounting to the children, when the time for accounting came, for the proceeds or for what it was reasonably worth. It follows that the deed

to her son was a conveyance of the legal title to him, and, whether the consideration expressed therein was to be treated as an advancement, in the subsequent distribution of the trust estate, or was a simple gratuity on her part, is of little consequence. Taggart, the mortgagee, had a right to suppose that the transaction was just as it appeared upon the face of the deed. There was nothing to put him upon inquiry, and it is not pretended that he had any notice of the nature of the transaction between Mrs. Sullivan and her son, or of the consideration which passed between them. On the contrary, Charles A. Sullivan entered into the exclusive possession of the lot in 1873 ; erected thereon a dwelling-house, barn and other out buildings, of the value of $10,000 and upwards. In the fall of 1874 he moved into this house and kept it as his own, receiving the conveyance from his mother in 1877. At this time all of the children were, and for three years had been, of full age, and had been residing in the town of Butler. The possession and improvement of the property were wholly consistent with the exclusive ownership of Charles A. Sullivan under the deed.

It is said that the parties in interest might elect to forego a sale under the provisions of the will and take the land in lieu of the proceeds. It is sufficient to say in reply to this that the parties in interest did not do so. This they could do only by agreement or by some decisive act. For nearly eight years after the execution of the mortgage to Taggart, the conduct of the children was consistent only with the exclusive ownership of Charles A. Sullivan. It was not until September 9, 1885, that any word was spoken or any act done indicating a desire of the heirs to take the land instead of the money, and then the property had passed out of their control.

Although we might not be willing to adopt all the reasoning of the learned judge of the court below, he was certainly right in the result.

The judgment is affirmed.