## Silliman v. Haas, Appellant.

[Marked to be reported.]

*Resulting trust—Evidence.*

Where a title by way of resulting trust is set up against an absolute deed to the person holding the legal title, the evidence to support it must be clear, explicit and unequivocal.

Haas, acting, as he alleged, for his son, bought a farm at an orphans' court sale in 1864, and took the title in his son's name. Subsequently creditors of Haas obtained judgment against him and sold the farm as his property. Twenty-two years afterwards an alience of the creditor who

had bought the property, brought ejectment against Haas. The action was based on declarations made by Haas after the orphans' court sale and not in his son's presence, to the effect that he had plenty of money to buy the farm, and that he had taken title in his son's name to keep his creditors from taking the land. Haas denied making such declaration, and there was full and explicit evidence that the farm had really been bought for the son, who had paid for it out of his own money, the source from which the money was obtained being also shown. *Held,* that it was error to submit the case to the jury.

*Trust ex maleficio—Limitation of action—Act of* 1856.

A resulting trust ex maleficio growing out of the payment of the purchase money of land by one person where the title is taken by another to defraud creditors of the real purchaser, is a trust within the act of 1856, and is barred after five years.

*Adverse possession—Fraud.*

Title by adverse possession under a deed claimed to be made in fraud of creditors, commences from time of entry by the alleged fraudulent grantees, and the statute becomes a bar at the end of twenty-one years from such entry.

*Evidence—Declarations—Fraud.*

*Not decided* whether the declarations of a defendant in an ejectment to the effect that he had bought the land at an orphans' court sale, and had taken title in his son's name, so as to defeat creditors, are admissible.

Argued Feb. 15, 1892. Appeal, No. 290, Jan. T., 1891, by defendant, Henry Haas, from judgment of C. P. Schuylkill. Co., March T., 1885, No. 270, on verdict for plaintiff, Alexander S. Silliman. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS and HEYDRICK, JJ.

Ejectment to recover a tract of land in Ryon township.

The facts appear by the opinion of the Supreme Court.

At the trial before PERSHING, P. J., the court admitted in evidence under objection the testimony of Joseph Faust and Henry Mauger, the essential portions of which are quoted in the opinion of the Supreme Court. [3]

Defendant presented the following point, among others:

" 7. Under all the evidence in the case the verdict must be for the defendant. *Answer:* We decline to so instruct you, but leave it to you as a question of fact. [8]

Verdict for plaintiff. The court subsequently discharged a rule for judgment non obstante veredicto, and entered judgment on the verdict. Defendant appealed.

*Errors assigned* were, inter alia, (3) rulings on the evidence;

(6–8) answer to defendant's point, quoting point and answer; (7) in discharging rule for judgment non obstante veredicto.

*G. H. Gerber* and *J. W. Ryon,* with them *James Ryon,* for appellant.—If the suit had been brought against Adam S. Haas, the declarations of Henry Haas could not have been admitted. These declarations seem to have been admitted by the court below on the ground that they were admissions against interest. Henry Haas, however, obtained the legal title in 1870, and his position was then changed. He was in the position of Adam S Haas. The situation of the parties at the time the alleged declarations were made, was the only safe guide as to competency of the testimony.

The declarations of Henry Haas made after the title had vested in Adam S. Haas, and in the absence of Adam S. Haas, could not be given in evidence without other proof of collusion between Adam and Henry Haas: McElfatrick v. Hicks, 21 Pa. 406; Stewart v. Fenner, 81 Pa. 177; Tisch v. Utz, 142 Pa. 186; Unangst v. Goodyear, 141 Pa. 127.

There was no evidence to show collusion or fraud in the purchase of this property. On the contrary there was clear and ·explicit evidence that Adam S. Haas furnished the purchase money, and the source from which he obtained it is clearly shown.

Declarations made by parties after the title has vested are not admissible for the purpose of establishing a trust: Behm v. Moley, 133 Pa. 614.

This action is barred by the statute of limitations: Strimpfler v. Roberts, 18 Pa. 283; McBarron v. Glass, 30 Pa. 135; Earnest's Ap., 106 Pa. 310; Fritz v. Brandon, 78 Pa. 355; Brown v. Day, 78 Pa. 140; Perry on Trusts, § 865. The statute runs in favor of a fraudulent grantee: Mead v. Leffingwell, 83 Pa. 187; Byrod's Ap., 31 Pa. 242; Fisher's Ap., 33 Pa. 295; Dicken v. Hays, 5 Cent. R. 517.

If the holder of the legal title may be turned into a trustee for the person intended to be defrauded, it must be according to the provisions of the act of 1856: Stafford v. Wheeler, 93 Pa. 462. The trust alleged to have been created in this case

was a resulting trust within the act of 1856, and was barred after the expiration of five years : Cristy v. Sill, 95 Pa. 380.

If there was any fraud in the transaction as alleged, Adam S. Haas was really a trustee ex maleficio : Bispham on Equity, § 91; Perry on Trusts, § 106. Such a trust is within the act of 1856: Maul v. Rider, 51 Pa. 377; 59 Pa. 167; 70 Pa. 30; Cristy v. Sill, 95 Pa. 380; Huffnagle v. Blackburn, 137 Pa. 633.

The fact that Kirkpatrick never had possession of the property shows conclusively that it does not come within the case of Clark v. Trindle, 52 Pa. 492. Adam S. Haas and subsequently Henry Haas, claiming under him, were in continuous possession adverse to the rights of creditors : Perry on Trusts, §§ 864, 865; Walker v. Walker, 16 S. & R. 379; Fox v. Cash, 11 Pa. 207.

A question of fraud cannot be investigated unless suit is instituted within twenty-one years after the fraud has been committed: Kribbs v. Downing, 25 P. S. R. 399; Perry on Trusts, sec. 865; Mead v. Leffingwell, 83 Pa. 189; Lammer v. Stoddard, 5 Cent. R. 407; Downy v. Garard, 24 Pa. 52; Baldwin v. Martin, 35 N. Y. 85.

*F. W. Bechtel, J. R. Henderson* with him, for appellee.— The declarations of a party to the record against his own interest are always admissible : Kimmel v. McRight, 2 Pa. 38.

The doctrine of trusts does not apply to a case of this kind : Dunn v. Truitt, 8 Phila. 27. The jury having found that the purchase money was Henry's, and as it is not disputed that Henry directed the deed to be made to Adam, there could be no implied trust between them.

Although the legal title was in Adam S. Haas, it was for the use of Henry Haas, and the statute of uses at once executed it : Bump on Fraudulent Conveyances, 209; Curtis v. Leavitt, 15 N. Y. 9; 1 Bl. Com. 231; Thompson v. Dougherty, 12 S. & R. 448; Mackason's Ap., 42 Pa. 330; Kimmel v. McRight, 2 Pa. 38.

Henry Haas's possession was not continuous; it was interrupted by the sheriff's sale, and it only became adverse upon the delivery of the sheriff's deed, on Dec. 11, 1865. This suit having been brought on Feb. 18, 1885, twenty-one years has

not elapsed. The right of action is not barred until twenty-one years after the right of entry accrued: Hall v. Vandegrift, 3 Binn. 374; Winters v. DeTurk, 133 Pa. 359; Coulter v. Phillips, 20 Pa. 154.

OPINION BY MR. JUSTICE GREEN, October 3, 1892.

The claim of the plaintiff in this case is extremely stale. The title which he proposes to impeach is the title which Adam S. Haas acquired by an orphans' court sale held the 31st day of October, 1863. The present action of ejectment was not brought until the 18th day of February, 1885. The plaintiff's claim is founded upon an allegation that the orphans' court sale of 1863 passed no title to Adam S. Haas. It is claimed for the plaintiff that the money which was paid for the land conveyed to Adam S. Haas under that sale, was the money of Henry Haas, his father, and as against the creditors of Henry Haas the title is to be regarded as vested in Henry Haas.

Of course the legal title was in Adam S. Haas, and Henry Haas being, according to the allegation of the plaintiff, a particeps criminis with Adam S. Haas, could not impeach the title of Adam S. Haas. But it is said that, for the creditors of Henry Haas, the transaction is to be treated as a device to hinder, delay and defraud the creditors of Henry Haas, and that John Kirkpatrick, being one of those creditors, was privileged to impeach the validity of the title in Adam S. Haas, and that the plaintiff having acquired the right of Kirkpatrick has the same privilege. Kirkpatrick obtained a judgment against Henry Haas in June, 1865, and upon execution process upon that judgment the land in question was sold to Kirkpatrick in December, 1865, by the sheriff, as the land of Henry Haas, for the sum of twenty dollars. Silliman, the plaintiff, obtained a conveyance of Kirkpatrick's title by deed dated May 31, 1884, and upon that title this action of ejectment is founded. It will be observed therefore, that the sole question in this cause is the validity of Kirkpatrick's title to the land. A question of the application of the statute of limitations arises both under the statute of frauds, and by adverse possession for twenty-one years. Another question of controlling importance arises as to the sufficiency of the evidence to impeach the title which Adam S. Haas acquired in 1863 by the orphans' court sale above mentioned.

There is no doubt that Adam S. Haas, by the sale, acquired the legal title to the land. But it is claimed on behalf of the Kirkpatrick title that the money which paid for the land was furnished by Henry Haas in fraud of his, Kirkpatrick's, right as a creditor of Henry Haas. It is not the case of a debtor conveying his land to another in fraud of his creditors, but that land, for which Kirkpatrick's debtor paid money, was to be treated as the land of Henry Haas for the benefit of his creditors. It is at once manifest that, unless this allegation of the furnishing of the money by Henry Haas to pay for the land, was true in fact, the plaintiff has no case. Therefore it is of the last importance to consider what is the character of the testimony in the cause on that subject. In point of fact there is no proof in the case of the actual furnishing of any money by Henry Haas for the payment of the purchase money of the land. No one testified to any knowledge of such actual payment. The plaintiff alleges, however, and gave evidence to prove, that Henry Haas subsequently to the sale, declared that he wanted the deed made to his son Adam, because he (Henry) had gone bail for parties and had to pay it and it broke him up, and he would not dare buy it in his own name, but he had saved money enough to buy this place and another one like it; that he dare not put it in his name or else his creditors would come and take it from him. Two witnesses were examined, Joseph Faust and Henry R. Mauger, who testified substantially to the declarations. Three other witnesses were examined by the plaintiff, Walborn, Mellon and Staufer, on this subject, but none of them testified to any declaration by Henry Haas that he had furnished the money to pay for the land.

As the plaintiff's case is founded upon the testimony of the two witnesses, Joseph Faust and Henry R. Mauger, it is necessary to examine and consider their testimony with some care. Had the present action been brought against Adam S. Haas, or some other alienee of his title than Henry Haas, it is clear under the authorities that the declarations of Henry Haas testified to by these two witnesses, could not have been given in evidence. There was no independent proof of any complicity of Adam S. Haas in the alleged fraud to cheat the creditors of Henry Haas, and therefore the declarations not having been made in the presence of Adam S. Haas could not have the

effect of destroying or impairing his title. In McElfatrick v. Hicks, 21 Pa. 402, it was said: "Nothing can be more plain than that the declarations of a grantor are not evidence of fraud, as against an honest purchaser for an adequate consideration, even when made before the execution of the contract, and it would be more absurd, if possible, to allow declarations made after the title had passed to affect its validity." To the same effect are the cases of Unangst v. Goodyear, 141 Pa. 127, and Tisch v. Utz, 142 Pa. 186. Under these decisions it is clear that the title of Adam S. Haas could not have been affected by the declarations in question. Nothing but the fact that the declarations were said to have been made by Henry Haas himself and that he is the defendant in this case, could make the question debatable now. In the view we entertain as to the character and legitimate effect of the declarations it is not necessary to decide the question and therefore we pass it by.

Recurring now to the particular testimony of the witnesses we quote all the essential parts of it. Joseph Faust was one of the sons of William Faust, the decedent, as whose property the land in controversy was sold, and had bought the land at the orphans' court sale but was unable to pay for it and, after some negotiation with Henry Haas, it was agreed that the property should be put up again and knocked off to the purchaser for the same price that Joseph Faust had agreed to pay for it. All of this was done. Henry Haas attended the sale and bid the price agreed upon and he signed the conditions with the name of his son Adam S. Haas. The sale was returned to the orphans' court as having been made to Adam S. Haas, and as such was confirmed by the court, and deed made accordingly.

Of course some explanation had to be made and was made of the reason for introducing the name of Adam S. Haas into the transaction. Joseph Faust gives this account of that subject: He was asked: "Did he (Henry Haas) say anything to you about how he wanted the deed made and why he wanted it made in any way? A. He did tell me. Q. What did he say? A. The last time he was up to the place? Q. Was that before the sale? A. Yes, sir. He said he wanted the deed made in his son Adam's name, because he had went bail for parties and had to pay it and it broke him up, and he would not dare buy it in his own name, or else those fellows would

come on him. But he had saved money enough to buy this place and another one like it, but he dare not put it in his name or else his creditors would come and take the property from him. Q. He told you he had plenty of money to buy it but that he must put the deed in the name of his son Adam so that his creditors could not get at it? A. He did not say he had plenty. He said he had money enough to buy this place and another one like it." On cross-examination the witness, after repeating the history of the negotiation, was asked: " Q. Is that all that was said? A. I do not know. Twenty-two year ago is quite awhile. There is a good many things that concerns the man that will stick to his memory, but things that do not concern him much it don't. Q. He told there that he had gone bail and lost money? A. Yes, sir, he did, and he would make it in his son Adam's name. But he said I have money enough of my own to buy this and another one like it. Q. Did he tell you he had broken up in business? A. No, sir, he did not. He said he had went bail for fellows and they left him stick. That is the way he told me. Q. Did he not tell you he could not buy anything in his own name, that he would buy this for Adam S. Haas? A. No, he did not put it in that way. He said 'I must put it in Adam's name so they can't get it.' Q. Did he not say 'I cannot buy this property in my own name?' A. He did. I cannot put it in my own name. Q. Did not he say that Adam S. had some means, that he could pay for this property? A. No, sir; he said he had money enough of his own to buy this place and another; 'but I have to put it in Adam's name so they can't get hold of it.' "

The foregoing is the substance of all the testimony of Joseph Faust, upon examination in chief for the plaintiff and on cross-examination, on this subject. In no part of it does it appear that Henry Haas said that it was his own money that was to be paid for the land. He said he had plenty of money to buy this farm and another one like it, but he did not say that the money that was to be, or that was, paid for the land, was his own money. All the rest of the testimony was a mere explanation of why it was necessary to make the deed to his son, to wit, that he, Henry, had gone bail for parties who let him stick and he could not hold property in his own name because his creditors might take it from him. Of course this would be

so, but being so, it does not prove that the money which was paid was his money, or was not the money of Adam. If the other proof in the case was that Adam really did furnish the money, this declaration of his father would not be in hostility with that proof and would not even be inconsistent with it. In other words, all the declarations of Henry Hass, as testified to by the witness, could be strictly true, and yet all the proof that Adam furnished the money that paid for the land could also be strictly true. Hence the testimony of this witness does not require the disbelief of the testimony that in point of fact Adam furnished the money that paid for the land.

The testimony of Mauger is substantially of the same character as that of Joseph Faust, to wit, that Henry Haas told him he had failed where he had lived before, that he had to put the deed in Adam's name and that he had things so shaped that he had money enough to buy the place, but the witness did not testify that Henry Haas told him at any time that the money which was actually paid for the land was his money. The testimony of this witness also could be strictly true and yet the testimony that Adam really furnished the money that paid for the land could be strictly true also.

The writer has been thus particular in stating the character and substance of the plaintiff's testimony because of the ultimate question which arises upon its effect. That question is whether the testimony is sufficient to defeat a title to land acquired at a judicial sale and acquiesced in, or not questioned, for a period of nearly twenty-two years, there being no disability to disbar the plaintiff or his grantor from attacking the title at any time during that period. We will consider that question presently.

In the meantime it is necessary to consider the other testimony in the cause, affecting this subject.

Henry Haas, the defendant, testified that he had failed in Northumberland county for four or five thousand dollars, that he was sold out by the sheriff, that all his property was sold and that when he went to Girardville he had nothing but his clothes. This was in 1863 and he stayed there until April, 1864. That Adam wanted to buy a farm and had been looking at another farm with a view of buying it, and when he, Henry, heard of the Faust farm he told Adam about it and they both went to see

it though not together.  That he bargained with Joe Faust for the farm for Adam and told Faust so, and finally they agreed upon a price, he attended the sale, bid for Adam, and it was knocked down in Adam's name.  That he was acting for Adam all the time and that Adam gave or sent him the money to pay for it, and it was all Adam's money that was paid for the farm.  He also said that none of his own money went into the farm, and that he had no money except what he earned that summer.  He was asked as to the declarations testified to by Joe Faust and Mauger, and denied that he had ever said to either of them that he had money enough to buy the farm ; he said that Adam sent him the money, about two thousand dollars, to pay for the farm, by Edwin Haas, the day before the sale.

Adam S. Haas was examined and testified that when he came out of the army he wanted to buy a farm, and when he heard of the Faust farm being for sale, he went to see it, and decided to buy it and directed his father to act for him in the matter; that he was living and working, at the time, with another man at some distance from the farm ; that in order to pay for the farm he borrowed thirteen hundred dollars from his uncle Nathan Haas and two hundred and sixty-five dollars from two of his brothers and the remainder of the purchase money he had earned while in the army, and by work done after he had left the army ; that his father in making the purchase acted as his agent exclusively, and had no interest in it himself and put no money in it; that he gave the money to pay for the farm to his brother Edwin to take to his father and deliver it to him for the purpose of making the payment; that he moved on the farm in April, 1864, and was the owner and manager of it, and remained there until 1873 when he left and went west ; that he repaid his uncle the money he had borrowed from him while he lived on the farm out of money which he had earned on the farm.

The testimony of Nathan Haas was also taken.  He was the brother of Henry Haas and uncle of Adam S. Haas, and said he lent thirteen hundred dollars to Adam to buy a farm with, and took Adam's note for it which Adam afterwards paid.  He said also he let Adam have the money that the boys sent him from the army.  He also said that he never lent any money to Henry Haas to buy the farm.

Having carefully examined the other testimony in the cause we fail to discover any that is in contradiction of these witnesses, or any other testimony impeaching their credibility. Nor do we discover any evidence of any fraud or collusion between Henry Haas and his son Adam for the purpose of defrauding the creditors of Henry.

Upon the question of the validity of Adam's title, therefore, under his orphans' court deed, we find the deed itself duly made to him after a confirmation by the court, and the positive testimony of three witnesses, Henry, Adam S., and Nathan Haas, to the effect that the money which actually paid for the land was Adam's money, the most of it loaned to him by his uncle Nathan, and that Henry had furnished no part of the money and had no interest in the purchase. We find no proof that Henry ever furnished a dollar of the money that actually paid for the land. We find also an actual continuous possession of the land in strict accordance with the paper title from early in the year 1864 to the time this action was brought, in February, 1885, such possession being first in Adam from 1864 until 1870, and after that in Henry Haas, under conveyance by Adam of his title thereto.

Against this title we have only the testimony of two witnesses who state certain declarations made by Henry in the absence of Adam. Those declarations we have heretofore discussed and shown that they do not necessarily import that the money of Henry actually paid for the land, and that they are not inconsistent with the fact that Adam's money was the real purchase money of the property.

The question that arises is whether in such a condition of the testimony there is enough evidence to justify a chancellor in setting aside Adam's deed on the ground of fraud, after a delay of nearly twenty-two years on the part of a creditor and his alienee neither of whom was subject to any disability to impeach the title at any time. We are clearly of opinion that upon the whole case the evidence was entirely insufficient to justify such a decree, and that being so we consider that it was error to submit the case to the jury, and to refuse to affirm the defendant's seventh point.

It must be constantly borne in mind that this is not the case of a conveyance of the land in dispute, by the former owner,

for the purpose of defrauding his creditors. In such a case if the fact of the fraud is true, the conveyance passes no title and the grantor remains the actual owner, and any lien creditor can sell the land as the property of the fraudulent debtor and acquire his title thereto. Such a title has no element of trust about it. The sale of the debtor's title passes all of the title the debtor had, and the creditor can make out his case by proving the fraudulent character of the previous conveyance.

But in this case Henry Haas had no title to the land when Kirkpatrick recovered his judgment. The legal title had never been vested in him at any time and it was then really vested in Adam S. Haas. Even if Henry's money had really paid for the land he could never have had the help of the law to acquire the title, because he was particeps criminis, and could not have asserted his own fraud as the basis of a decree. If there were no fraud in the case, and he had furnished the money, he could have established his title by way of a resulting trust only. Now his creditors, while they are at liberty to assert the title in him for their benefit, must do it in the method that he would be obliged to pursue, to wit, by the application of the doctrine of resulting trust, because if Henry really did not furnish the purchase money, his creditors could not assert any title in him on the ground that he had furnished it. Consequently when the creditors assert that kind of a title, they are subject to the same rules that govern the establishment of such a title in any one.

Now nothing is more clear under all the authorities than that where a title by way of resulting trust is set up against an absolute deed to the person holding the legal title, the evidence to support it must be clear, explicit and unequivocal.

In Kistler's Appeal, 73 Pa. 393, it was said in the opinion, by AGNEW, J.: "The evidence to establish a resulting trust, especially one arising ex maleficio, which is an imputation of fraud, should be clear, explicit and unequivocal: McGinity v. McGinity, 13 P. F. S. 38; Nixon's Appeal, Ib. 279; Lingenfelter v. Richey, 12 Ib. 123." We affirmed and applied this ruling in Kimmel v. Smith, 117 Pa. 183.

In the former of these cases, McGinity v. McGinity, 63 Pa. 38, SHARSWOOD, J., said, speaking of a resulting trust or that a deed was a mortgage: "Both of these things may, no doubt,

be proved by oral testimony, but it is equally certain that the evidence ought to be clear, explicit and unequivocal." And further commenting upon the testimony of a witness : " The credit of the witness was for the jury; but especially in a case where a trust, or the conversion of an absolute deed into a mortgage is attempted to be made out by parol evidence, the court and jury exercise the functions of a chancellor, and the evidence, assuming the testimony of the witnesses to be true, ought to be such as would satisfy his conscience. . . . Whenever therefore, upon the trial of an ejectment founded upon an equitable title, the court is of the opinion that the facts proved do not make out a case in which a chancellor would decree a conveyance, it is their duty to give binding instructions to that effect to the jury." Justice SHARSWOOD then proceeded to discuss the testimony relied upon to establish the trust, and although the court below held it to be sufficient to submit to the jury, and the jury found a verdict in favor of the plaintiff, establishing the trust, this court held the evidence insufficient to be even submitted to the jury, and therefore reversed the judgment.

In that case as in the present the most important testimony consisted of proof of conversations and declarations of the parties interested both before and after the deed was executed, quite consistent with the alleged trust, but we did not consider them sufficient to defeat the absolute deed or turn it into a trust. There was proof of the declarations of the party claiming the trust that he had the money and it was in a certain bank, just as here the only evidence in the case that Henry Haas had any money at all is the testimony of Joe Faust and Mauger that he said so. In the McGinity case we held this insufficient.

The doctrine was repeated in Nixon's Appeal, supra, in which we said, " the evidence must be clear and unequivocal in showing that the money was paid at the time," and, quoting from a decision of Chancellor Kent, " the whole foundation of the trust is the payment of the money, and that must be clearly proved."

The law upon this subject is so perfectly familiar that it is unnecessary to multiply the citations of authority. The case is not only entirely destitute of the kind of testimony which

ought to be found in such causes, but it is also extremely suspicious and highly reprehensible on account of the gross and extraordinary laches of the plaintiff and his grantor of the title, in asserting their claim. The orphans' court sale to Adam S. Haas was made in October, 1863, and it was confirmed and deed delivered in May, 1864, and yet this action was not brought until February, 1885. The very forcible and pertinent language of the present Chief Justice in delivering the opinion in the case of Christy, Receiver, v. Sill, 95 Pa. 380, is quite applicable to the facts of this case, viz.: "We have here an ejectment brought in 1875 for a valuable property, and a recovery upon the ground of a fraud committed in 1863 by the purchaser at a sheriff's sale. Said fraud consisted chiefly in obtaining the property at less than its value by falsely pretending that he was bidding it in for the family of the defendant in the execution, and by this and other devices deterring other persons from bidding. There must be some point of time when a purchaser of real estate at a judicial sale shall not have his title cut up by the roots by mere parol evidence of what took place at such sale, or by a secret trust disentombed after the lapse of years, and set up by the uncertain recollection of witnesses as to remote transactions. The act of 1856 was evidently intended to prevent titles being disturbed in this manner. It is a highly beneficial statute and ought to be liberally construed." On behalf of the plaintiff the same argument was made as is made in this case, to wit, that the act of limitations of 1856 was inapplicable because the sale was absolutely void on account of the fraud. But Mr. Justice PAXSON refuted that proposition, and held that if there was a trust it was because of a constructive trust arising from the fraud of the purchaser who became a trustee ex maleficio; and he further held that under the statute of 13 Elizabeth, which was invoked there as here, the title was not absolutely void but only relatively so, that a good title could be imparted to an innocent purchase for value, and that if the party suffering from the fraud did not choose to avail himself of his privilege of defeating the fraudulent title, it would remain good in the holder. The whole subject was most fully considered and we held that such a trust, arising ex maleficio, was a trust within our statute of frauds and was barred after five years.

The same line of reasoning is applicable in case of a resulting trust growing out of the payment of the purchase money of land by one person where the title is taken by another, and we know of no reason why the same statute does not defeat it in the same time.

In Mead v. Leffingwell, 83 Pa. 187, we held that title by adverse possession under a deed claimed to be made in fraud of creditors commenced from the time of entry by the grantees, and continued to run from that time even against purchasers at a sheriff's sale under a judgment recovered against the grantor by one who claimed to be a defrauded creditor. It was contended there as here that the statute could not begin to run except from the time of the title under the sheriff's deed, but we held otherwise and ruled that the statute became a bar at the end of twenty-one years from the entry of the alleged fraudulent grantee. This case is still the law of this commonwealth and has never been questioned, and it, apparently, is applicable to the facts of the present case.

In Kribbs v. Downing, 25 Pa. 399, we said, BLACK, J.: " When a person against whom a fraud has been perpetrated, lies by for twenty-one years without causing it to be investigated, he will not then be permitted to show it. From so long an acquiesence the presumption of law is conclusive that all was done rightly."

But we do not decide this case either upon the statute of frauds or of limitations. We decide it upon the broad ground that the evidence is entirely insufficient to defeat the title of Adam S. Haas under the orphans' court sale and deed of the administrators of William Faust. We have shown that the declarations of Henry Haas given in evidence, did not necessarily, or by any strong implication, import that the money which paid for the land was his and not Adam's, that his explanation of his inability to take title in his own name on account of his debts was entirely natural, and consistent with honesty in the transaction, and that Henry Haas denied that he had ever said to the witnesses that he had plenty of money to buy the farm. It was also proved that he was sold out by the sheriff shortly before and had no money, and no proof was made that he actually had any money at the time of the transaction. Ample proof was made that Adam S. Haas did have

the money, and the source from which he got it was fully proved. Those having the right to impeach the title laid by for more than twenty-one years from its inception, before attempting to do so, and thus come into court with a tainted and suspicious case, affected by a laches so gross as to shock the judicial mind. We do not consider that there is any evidence in the case that can be called "clear," "explicit," "satisfactory" or "unequivocal" of the fundamental fact upon which alone the plaintiff can recover, and we are therefore of opinion that the defendant's seventh point should have been affirmed and the case withdrawn from the jury.

Judgment reversed.