1898.]                     Syllabus—Statement of Facts.

J. M. Olinger, Appellant, v. Peter Shultz and Susan
                          Mognet.

[Marked to be reported.]

*Trusts and trustees—Resulting trust—Husband and wife—Evidence.*

Where real estate standing in the name of a husband is claimed by the
wife as having been bought with her money, and as having been placed
in the name of the husband without her knowledge or consent, the evi-
dence to establish the resulting trust must be clear, precise, convincing
and satisfactory, not to the jury only, but also to the court as a chancellor
sitting and reviewing the testimony; and if the evidence fails to satisfy
the mind and conscience of the court it must be withdrawn from the jury.

In an action of ejectment against a wife to recover land sold at a sher-
iff's sale as the property of her husband it appeared that the plaintiff, at
the time of the sale, had full knowledge of the wife's claim. The evidence
showed that the property had been bought for the wife by her father,
and that he had paid all of the down money, which was nearly one third
of the entire consideration, and that all the subsequent payments had been
made with money of the wife and proceeds derived from the land. The
evidence showed that the husband's name had been inserted in the deed
by mistake or fraud, without the wife's knowledge or consent, and that
as soon as she discovered that the title was in the husband, she demanded
a deed from him. *Held*, that the evidence was sufficient to establish a re-
sulting trust in favor of the wife.

*Statute of limitations—Resulting trust—Husband and wife.*

Where land purchased with the money of a wife has been placed by
mistake in the name of the husband, the statute of limitations does not
begin to run against the resulting trust in favor of the wife, until she dis-
covers the mistake.

Argued Oct. 13, 1897. Appeal, No. 132, Oct. Term, 1897,
by plaintiff, from judgment of C. P. Somerset County, May
Term, 1895, No. 425, on verdict for defendants. Before STER-
RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN
and FELL, JJ.  Affirmed.

Ejectment for a tract of land in Elk Lick township. Before
LONGENECKER, P. J.

The facts appear by the opinion of the Supreme Court.

When Susan Mognet, one of the defendants, was on the stand,
defendant's counsel offered to prove by her that as soon as she
saw the deed for the land, and saw that it had been made to her

husband, J. G. Mognet, instead of to her, she complained about it, telling him she had paid the purchase money; that he himself said that the deed was made that way in mistake, and he promised to rectify it by making the deed to her.

It was objected to as incompetent on the ground that these are self-serving declarations, and the plaintiff cannot be affected by them, made in his absence.

The Court: I think we will permit her to show the fact, without going into the conversation between her and her husband. Exception noted and bill sealed to the plaintiff. [8]

The court admitted under objection and exception the deed of Joseph G. Mognet to Susan Mognet for the land in dispute, dated October 14, 1892. [9]

Defendants' counsel, in repetition of the offer made earlier in the trial of the case, which was excluded, offered to prove by the defendant, Susan Mognet, that when she learned first that this deed had been made in the name of her husband, she objected to its having been so made in the name of her husband, and asked her husband then to make the conveyance directly to her; that he admitted that the property had been paid for by her or her estate and promised to make the conveyance to her at an early day; that he neglected it, and that he often promised to do so, and continued to neglect it up until the date of this deed offered in evidence.

This was objected to as incompetent and irrelevant, being self-serving declarations made between husband and wife.

The Court: We will permit the defense to show that upon demand being made upon the husband for a deed he assured the witness that he would have the title put in her, but neglected to do so, as a fact, not by way of receiving the declarations of the parties in regard to the title. Note an exception and bill sealed to the plaintiff.

Under this ruling, Susan Mognet, the defendant, was permitted to testify that she first learned of the title being in the name of her husband in June, 1890; that she told her husband then that she wanted the deed in her name, and that he said he would have it changed right away, but that he neglected it, and she asked him more than once to make the change, but that he did not make the deed to her until October 14, 1892. [10]

The court charged in part as follows :

[She alleges that she had no knowledge whatever that the deed had been made to the husband instead of to herself, until June, 1890.   She says she fully believed the legal title was in her name until she saw the deed for the first time in that month. What does the evidence satisfy you in regard to that?   It is a question of fact for your ascertainment.   If it is as she says, she was not required within that time to assert her rights, when she was unconscious that they were being jeopardized.   She was not called upon to demand an acknowledgment in writing of an equitable title, if she believed in good faith the legal, as well as the equitable, title was already in her name.   In such case the statute did not run until she learned the true state of her title.] [1]   [But when she discovered its true condition, it became her duty to take steps to secure in writing the evidence of the title which the statute points out.   Did she do so?   She speaks of demands made on her husband, and of his assurance that he would attend to it.   This likewise is a fact for your ascertainment and determination.   If she made such demands on him and obtained the promises she claims, and in good faith relied on them, she is not chargeable with such laches as would estop her from asserting her title in this action.   But if, on the other hand, you conclude from the evidence that she did not exercise vigilance in securing for herself the evidence of her alleged equitable title in writing, but delayed the matter until the property was incumbered by her husband, without taking action, she would be estopped from setting up the title now.] [2]

Plaintiff's points and answers thereto were among others as as follows :

1. Under all the evidence in the case, the verdict must be for the plaintiff for the land in dispute.   *Answer :* Refused. We cannot determine that question as a matter of law, as you have already inferred from our charge. [3]

3. It being admitted that the title to the land was in George F. Baer, and that he conveyed to Joseph G. Mognet by deed dated April 4, 1885, and recorded on April 15, 1885, and that S. J. Ringler, who had been a tenant under George F. Baer, remained a tenant on the farm, by virtue of a lease under Baer, until Mognet moved there in the spring of 1886, and he remained there until April 1, 1888, and then rented to Peter Shultz, who

remained on the farm as a tenant of Joseph G. Mognet until April 1, 1893, and as no deed was made from Joseph G. Mognet to Susan Mognet until October 4, 1892—more than five years after he acquired title—therefore the case is within the sixth section of the act of 1856, and the verdict must be for the plaintiff. _Answer:_ This is so if you find that the wife knew during the time mentioned that the legal title was not in her, but in the husband. But if she only discovered that fact in 1890, the five year period provided by the statute ran from that time, and had not, of course, expired in October, 1892, when he conveyed to her. [4]

4. In order to create a resulting trust the facts necessary to constitute such a trust must have existed at the inception of the title in the trustee; that is, in this case, the purchase of the property must have been made for Mrs. Mognet at her direction, paid for with her money at the time, or secured by her, and the deed must have been made in the name of her husband by mistake, and not acquiesced in by her when it was delivered, and the evidence is not sufficient to warrant the jury in finding in favor of a resulting trust. _Answer:_ In order to create a resulting trust the necessary facts must have existed at the inception of the title in the husband, and the property must have been paid for with the wife's funds, not with funds belonging to or loaned to the husband; the deed must have been made in his name by accident, inadvertence or mistake, and not acquiesced in by her after she learned it. But it is not necessary that the purchase was made at her direction. Nor can we say that the evidence is insufficient to warrant you in finding in favor of a resulting trust. That is a question which you will determine, under the instructions given you, on all the evidence. The point, as written, cannot therefore be affirmed, and it is refused. [5]

5. The deed to Mognet by George F. Baer having been recorded on April 14, 1885, and his title to the property not brought in question until the execution of the deed to his wife on October 14, 1892, a period of seven years and six months, the record was constructive notice to Susan Mognet of the deed to Joseph G. Mognet, and more than five years having elapsed after the passage of the Act of June 3, 1887, P. L. 332, until the execution of the deed by Mognet to her on October 14, 1892, she is estopped from setting up title to the land in dispute, and

the verdict must be for the plaintiff. *Answer :* It is true, the recording of the husband's deed in April, 1885, was constructive notice to the wife, as it was to all other persons, that the legal title was in him, but it was merely constructive notice, and if you believe that she did not, in fact, know it until 1890, the rule invoked in the point does not apply. The correctness of the point depends on the way you shall find that fact. [6]

6. As it has been shown by the testimony of Susan Mognet that she learned in June, 1890, that the deed was made in the name of her husband, but that she let it remain in his name until after he became liable to Hocking on the note for $5,000 on October 11, 1892, and judgment entered thereon on October 13, 1892, and having taken no steps to secure a deed from her husband until after the Hocking note was entered against her husband, she is estopped from setting up title to the property, and the verdict must be for the plaintiff. *Answer :* This point is affirmed if you find the facts as stated; but it is not necessary that she should have instituted legal proceedings against her husband to enforce her equitable title, or procure a declaration of the trust, in order to escape an estoppel, if she, in good faith, demanded a conveyance from him and relied on his promise to make it, and especially so if she was unaware of his contracting the liability to Hocking before receiving her deed. [7]

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* were (1–7) above instructions, quoting them; (8–10) rulings on evidence, quoting the bill of exceptions; (11) refusal of new trial.

*Wm. H. Ruppel,* with him *Wm. H. Koontz, J. G. Ogle* and *Alex. H. Coffroth,* for appellant.—The evidence was insufficient to establish a trust : Hoover v. Hoover, 129 Pa. 201 ; Silliman v. Haas, 151 Pa. 52 ; Lau's App., 176 Pa. 100 ; Fowler v. Webster, 180 Pa. 610 ; Reno v. Moss, 120 Pa. 49 ; Hess v. Calender, 120 Pa. 138; Dyer's App., 107 Pa. 446 ; Wylie v. Mansley, 132 Pa. 65 ; Gilchrist v. Brown, 165 Pa. 275 ; Young v. Senft, 153 Pa. 352.

*Francis J. Kooser,* with him *Ernest O. Kooser* and *Wm J.*

*Baer*, for appellees, cited Miller v. Baker, 160 Pa. 172; Light v. Zeller, 144 Pa. 581; Gilchrist v. Brown, 165 Pa. 283; Rupp's App., 100 Pa. 531.

OPINION BY MR. JUSTICE GREEN, January 3, 1898: .

In this case the action is ejectment brought by a purchaser at a sheriff's sale with full notice of the defendants' title. He was not an innocent purchaser for value of the title of Joseph G. Mognet, as it appeared on the record, and without notice of any trust or adverse title, and cannot set up any title as such. He was not even a judgment creditor of Mognet. He occupies, therefore, the position of one who purchases with full notice of a title by means of a resulting trust, in opposition to an apparent legal title. He neither purchased the land nor loaned money on the faith of the apparent title. There is but little if any dispute about the facts. The deed for the land in controversy was filled up and executed by the grantor, with a blank left for the name of the grantee. When the name was inserted Mrs. Mognet was not present and knew nothing of what transpired. With an amount of ignorance and stupidity on the part of the person who made the purchase which seems incredible when regarded in the light of a past occurrence, no direction was given as to whose name was to be inserted as the grantee, and the deed was not examined; it was left with the agent of the seller who left it at the office of the recorder of deeds, where the person who made the purchase afterwards found it, but says he never looked at it. The name of the husband was inserted instead of that of the wife, and thus has arisen the present controversy. It is the case of an alleged resulting trust in favor of a wife against her husband in whose name the legal title was taken. The basis of the trust is the claim that the land, a farm of one hundred and forty-two acres, was purchased by the father of Mrs. Mognet for her, that he paid the whole of the down money which was $2,000, at the time the deed was delivered, and that all the subsequent payments were made with money of the wife and proceeds derived from the land. There is really but one question in the case, to wit: was the evidence sufficient to establish such a resulting trust? The rule of law in this class of cases, as established by numerous decisions of this Court, is without any doubt or question. The evidence in support of the

trust must be clear, precise, convincing and satisfactory. It is not enough that it satisfies the jury, it must also satisfy the mind and conscience of the court sitting as a chancellor reviewing the testimony, and if it fails in this respect the evidence must be withdrawn from the jury : Reno v. Moss, 120 Pa. 49; Hess v. Calender, 120 Pa. 138; Hoover v. Hoover, 129 Pa. 201; Silliman v. Haas, 151 Pa. 53; Lau's Appeal, 176 Pa. 100; Fowler v. Webster, 180 Pa. 610; Gilchrist v. Brown, 165 Pa. 275; Way v. Hooton, 156 Pa. 8, and many other cases.

It is manifest, therefore, that it is necessary only to examine the testimony with care, in order to determine whether it is within the requirements of our decisions.    Peter Schultz being a mere tenant, the real defendant is Susan Mognet, the wife of Joseph G. Mognet, both of whom are still living.    As before remarked, there is scarcely any controversy as to the facts. The defendant's contention is that her father, Samuel P. Miller, bought the farm in dispute for her, and directed his son, Joseph S. Miller, to make the purchase.    There is no pretense, nor any proof, that the land was bought by the husband, Joseph G. Mognet.    The son, Joseph S. Miller, testified, that he bought the land for his sister, the defendant, at the instance of his father. He was asked, "State what you came to Somerset for, what you were directed to come for by your father?    A. Well, to buy this farm, to buy a farm from Judge Baer, agent for George F. Baer, for Susan Mognet, his daughter.    I bought the farm.    A deed was made for that farm by George Baer.    Q. Where did you get the deed?    A. In the recorder's office.    Q. Did you ever see the deed before it was recorded?    A. I might have seen it, but I never looked at it. . . . Q. After it was recorded, when did you next see the deed?    A. I don't know how long after he had that deed at the recorder's office, I took it along home and put it in my own safe. . . . Q. How long did you keep this deed in your safe after you had put it there?    A. That is more than I can tell you; it was there a couple of years, two or three or four.    Q. Was Susan Mognet present when you bought this farm?    A. No.    Q. Was Susan Mognet present when you handed the deed to be taken to the recorder?    A. No, sir.    Q Did she see the deed during the period it was in your safe?    A. I know she did not.    Q. When did you know that the deed was made in the name of J. G. Mognet?    A. That is more than I can tell

you. I never looked at the deed, how it was made.  Q. Tell us what you know of the payment of the purchase money of that farm.  A. I paid the first payment, the down money, $2,000, and the first payment $700, I paid so much money, and the balance had to be made off the farm for the first payment.  Q. Where did you get the $2,000 hand money?  A. From my father. Q. For whom did you pay it?  A. For Susan Mognet.  Q. How much cash did you pay on the first payment?  A. It was $535. Q. How was the balance of the first payment made?  A. That was made off the farm—rent.  Q. Who paid the rent?  A. Sam. Ringler; he had leased the farm before I bought it; he had leased it at the time I bought it.  Q. How much was that? A. Something like $100 and something.  Q. Have you any memorandum of it?  A. Not of that; the balance was fixed up by the rent, and that way the $750 was made up; I got the $535 from my father and paid it for Susan Mognet.  Q. Did your father pay any more in his lifetime?  A. That was the end while he was living; after his death he left a will; I was one of the executors.  Q. Now will you state what moneys you paid, if any, on this farm as executor of your father?  A. I paid the balance to Mrs. Mognet.  Q. Can you state what sums you paid her and when?  A. Yes, sir, the first distribution I paid $1,269.41; that was January 14, 1891.  Q. Did you not make two payments after the first payment before your father's death?  A. I only made one payment; in 1885 I paid the down money, and in 1886 I paid the $750.  Q. What year did your father die? A. In 1888.  Q. Proceed.  A. The last distribution I paid her $829.67, March 17, 1893.  Q. You paid her by these checks? A. That check and this receipt." After stating that he paid his sister all the money that was coming to her from her father's estate except what his brother, who was a coexecutor, paid her, he was asked, on cross-examination: " Q. How much money were you to pay for the farm?  A. $6,450.  Q. $2,000 was the hand money?  A. Yes, sir.  Q. And the balance in payments?  A. Yes, sir.  Q. How much a year?  A. $700 the first year, and the balance I don't know how many payments any more; they were annual payments, without interest." After stating that the deferred payments were secured by judgment note given by Joseph D. Mognet, and that the first payment of $535 was made to Judge Baer by himself and the tenant, and the payment of

$1,269.41 was made partly in money and part of it in land he conveyed to her, he said that her whole interest in her father's estate was $5,126.12, and was asked: " Q. She got in all $5,100, and she paid of that $816 on the property she lives on now, then she gave you a note for $408 and that note she paid afterwards? A. Yes, sir, after she had paid for the farm."

Samuel S. Miller, the coexecutor, testified that he had paid her $407.06 out of the estate. Susan Mognet testified that she was not present when the deed was delivered, and had no knowledge that it was in her husband's name until in 1890 ; that she furnished all the money that was paid for the farm, part of which was paid by her father during his life, and more was paid out of her share of her father's estate ; that $500, being the proceeds of the sale of her personal property on the farm, was paid on the farm ; that rent received from the tenant was all applied in that way. This rent was shown by the testimony of her husband to be for eight years, the first year $225 and the other years $212.50 each year. Mrs. Mognet testified that money was realized each year they occupied the farm from sales of grain, butter and other products, all of which went to pay on the farm. All these moneys were paid to her husband who testified that he deposited them in bank, and made the deferred payments with them, in discharge of the judgment note he had given until all were paid. A number of checks and receipts were given in confirmation of his testimony. Jos. G. Mognet was asked: " Q. Have you any knowledge of the payment of the hand money? A. Not more than Mr. Miller paid. The payment of some of the notes which I paid from the money Mrs. Mognet had received from her father's estate, and money she received from the sale of the implements—they were on the farm when we went there, and there was hay on the farm when we moved there, everything required by farming was there. I bought nothing. Q. What became of the money? A. That money I applied to the notes, the back payment of the farm. Q. What became of the rents? A. Them I treated the same way, on the notes of George F. Baer for the farm. Q. Can you tell how much money you received from your wife to pay on this farm. A. Rents and money from the sale, and money, as she received it from her father's estate, from the executors, I applied on the payment of the notes for the farm on the same

day, but when a sufficient amount was collected together. Q. How did you come to pay it? A. She gave it to me to pay it. Q. How did you pay it? A. By checks to H. L. Baer, attorney for George F. Baer. Q. What did you do with the deposits? A. I put them in the citizens' bank of Meyersdale and checked them out in my own name." Then follows a long statement of details of payments by the witness, accompanied by checks or receipts, which it is not necessary to repeat. It is enough to say that the whole of the purchase money was paid, and the judgment taken on account was discharged in full. The last payment was made in April, 1893, with the money his wife received from Samuel S. Miller, with that and some rent he says he paid the last $500. He was asked: "Q. In a general way, from what sources were the several sums you have stated you paid derived? A. From the proceeds of the farm and from money Mrs. Mognet received from the estate. Q. Did you pay any portion of the hand money yourself? A. No, sir. I didn't make the transaction nor pay any of the money. I had no part in it." He then explained how his name came to be inserted instead of his wife's. "Q. Do you know how the judgment for the unpaid purchase money came to be against you? A. I can explain that. When the deed was delivered, or when Judge Baer was at Joseph S. Miller's house, on the day of the delivery of the deed, I happened to be there. While Miller was doing something at his safe Judge Baer just opened the deed and said—the name was blank, the deed had already been acknowledged—and Judge Baer held the deed up to me and said, ' what is your full name?' I saw the blank space and he just wrote it in while Miller had his back turned working at the safe and was searching for the papers. Q. Did Mr. Miller see it or not? A. No, sir." It is manifest from this that Judge Baer supposed that the husband's name was the proper name to be inserted, and presumably he had not been informed to the contrary. So far as he was concerned it was a clear mistake. So far as the husband was concerned, it may have been a fraud on his wife, or he may have supposed it made no difference. In either case, and on either of these suppositions, it is clear the wife could not thus be deprived of her equitable estate in the land, and would be entitled to her proper remedy to enforce her claim. The testimony delivered was sufficient to account for

the whole of the purchase money. The testimony was direct
and positive; it was clear, convincing and satisfactory. There
was no contradictory evidence as to the essential and control-
ling facts in support of the trust.

The testimony satisfied the jury who found the verdict, under
correct instructions. It satisfied the court, who denied a new
trial on the merits. The evidence was credible and was believed
by the court and the jury, and we know of no reason for dis-
crediting it; and we have no disposition to disturb the verdict
or the judgment. We consider the whole of the evidence suf-
ficient to establish a resulting trust in the wife. The fact that
the husband leased the land in his own name; that he brought
an action and recovered a verdict for damages to the surface
against a coal company; that he gave his personal obligation
for the payment of part of the purchase money, which however
it was testified was paid with the wife's money; these were all
facts to be considered by the jury on the question of ownership,
but they were not controlling facts; they would not necessarily,
either separately or combined, suffice to destroy the wife's equi-
table estate; they were all susceptible of explanation, and such
explanation was given. Nor do we consider there is any force
in the contention that the wife's estate is barred by the statute
of limitations. She testified as did her husband, that the first
knowledge she had that the deed was not in her name was in
1890, and that she immediately demanded a deed from her hus-
band, which he promised, but procrastinated, for upwards of
two years, before he gave it to her. This period is not enough
to bring the statute into operation. The authorities are abund-
ant that the statute does not commence to run until she had
knowledge of the fraud. The plaintiff is in the same situation
as were the appellants in the case of Miller v. Baker, 160 Pa.
172, and of them we said, "If after the deeds were recorded,
and before the conveyance to her of the title acquired by them,
he had sold the land to a bona fide purchaser, the latter would
have taken a title unaffected by the trust. But the appellants
were not such purchasers. They bought at a sheriff's sale,
upon a judgment against the husband, and with notice of the
wife's equity. They have therefore his title only, and that, as
we have seen, cannot prevail against her." This is precisely
the case here, as we have already pointed out. The foregoing

views dispose of all the assignments of error except the 8th, 9th, 10th and 11th. As to the first three of these, they relate only to the offer of proof by the wife that she was in ignorance of the fact that the deed was made to her husband until she saw it in 1890, and that she immediately made complaint to her husband, and demanded a deed to herself from him, and that such a deed was made in 1892. Most certainly this was competent testimony. There could be no possible reason for rejecting it. Her ignorance of the true character of the deed was her excuse for not having it at an earlier date. That kind of excuse the law recognizes as sufficient, and it would be strange indeed if such testimony when offered should be rejected. What she said in regard to the payment of the money by her father and brother was not embraced in the offer, and was not excepted to when stated. Besides she might easily know the fact that such payments had been made without having witnessed the actual delivery of the money. As to the admission of the deed from the husband in 1892, of course it was proper to receive it.

The 11th assignment is only that the court refused a new trial. The mere statement of it is a sufficient answer to it.

Judgment affirmed.