## Wosche *v.* Kraning, Appellant.

Argued January 10, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Samuel P. Hagerman,* with him *William F. Quinlan,* for appellant.

*S. Regen Ginsburg,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, March 25, 1946:

In 1914 plaintiff, George G. Wosche, who was then living apart from his wife, and defendant, Alice J. Kraning, who was then living apart from her husband, entered into a meretricious relationship which they maintained continuously thereafter for a period of 29 years. During that time they cohabited at various places of residence in Philadelphia—from 1918 to 1930 on a farm in Tacony and from 1930 to 1943 at 7741 Hasbrook Avenue. In July of the latter year, after a series of violent quarrels, plaintiff left, or, as he claims, was ejected from, their Hasbrook Avenue home, and thereupon filed a bill in equity alleging that that property, the title to which was in defendant's name, had been purchased with his own funds, and praying that she be directed to convey it to him; he also sought a return of certain moneys of which he claimed ownership but which, he alleged, she had unlawfully withheld from him. The court granted the prayers of the bill, awarding him not only the real estate but a substantial recovery in money.

The testimony bearing upon the financial transactions between the parties which constitute the subject of the present litigation was all presented by plaintiff alone, except that statements regarding their various bank accounts were furnished by the bank representatives. Defendant offered no evidence, but moved to dismiss the bill on the ground that plaintiff had not made out a case entitling him to relief. Under such circumstances the findings by the chancellor have not the weight which attaches to them when the duty devolves upon him to deter-

mine, as between conflicting testimony, which witnesses are reliable and which side presented the true version of the facts.

In order to establish, by oral testimony, a resulting trust in real estate against the person holding the legal title the evidence must be "clear, explicit and unequivocal"[1] or, as it has been otherwise stated, "clear, precise and unequivocal"[2] or "clear, precise, convincing and satisfactory"[3] or "clear, precise and convincing"[4] or "clear, precise and indubitable".[5]. Plaintiff's testimony in the present case was neither "clear" nor "explicit" nor "unequivocal" nor "precise" nor "convincing" nor "satisfactory" nor "indubitable"; on the contrary it was vague, confused and contradictory throughout. However, enough may be gleaned from it to obtain a fairly satisfactory comprehension of the controversy.

The parties lived together and maintained a home just as though husband and wife. Defendant's lawful spouse died in 1916, plaintiff's in 1938. Plaintiff was a motorman employed by the Philadelphia Rapid Transit Company and in addition to that occupation he worked on the Tacony farm which he rented in 1918 and where he and defendant lived for a period of 12 years. He claims that from the sale of the farm produce he made about $1,000 a year and that he entrusted this money to defendant to pay the rent and deposit the balance in bank; it is not difficult, however, to realize, after reading his testimony, that defendant also was not an idler but rather an energetic housekeeper who ran the entire establishment and assisted him in at least the lighter phases of his work on the farm. In their financial affairs they obviously regarded themselves as "partners" and

---

[1] *McGinity v. McGinity*, 63 Pa. 38; *Earnest's Appeal*, 106 Pa. 310; *Silliman v. Haas*, 151 Pa. 52, 25 A. 72; *Kern v. Smith*, 290 Pa. 566, 139 A. 450; *West v. Young*, 338 Pa. 298, 13 A. 2d 39.

[2] *Keck v. Vandyke*, 292 Pa. 532, 141 A. 446.

[3] *Olinger v. Shultz*, 183 Pa. 469, 38 A. 1024.

[4] *Jourdan v. Andrews*, 258 Pa. 347, 102 A. 33.

[5] *Artz v. Meister*, 278 Pa. 583, 123 A. 501.

equal co-sharers of their worldly goods, an attitude quite natural under the circumstances of their intimate social and domestic relationship.[6] All moneys, from whatever source derived, were deposited in a number of bank accounts; one of these was opened in defendant's name in 1916, changed in 1930 to a trust account for plaintiff and made a joint account in 1932; another was opened in plaintiff's name in 1930 and changed to a joint account in 1932; still another, in the name of plaintiff as trustee for defendant, was opened in 1931 and changed to a joint account in 1932; two more, originally in plaintiff's name, were changed to joint accounts in 1935. Thus it will be seen that the funds were held under a variety of ever changing titles as between the parties and the bank records show that withdrawals from these accounts were sometimes made by plaintiff and sometimes by defendant, but without any indication, save in one or two instances, for what purposes the moneys were used and whether for the individual use of the party making the withdrawal or for their common benefit. Plaintiff gave no satisfactory explanation as to why some of the funds were deposited in his name, some in the name of defendant, and all finally in joint accounts; he merely represented himself as succumbing to her wiles and incessant nagging and denounced her for those qualities as though she were a modern combination of a Delilah and a Xantippe, although, with characteristic inconsistency, he also testified that "it was not fighting, it was all good natured", and "there was not always fighting; she could turn different in a couple minutes." On the whole, his testimony is quite as consistent with a gift to defendant, or a sharing with her, as it is with a parol trust in his favor.

In 1930 the Hasbrook Avenue property was purchased, plaintiff contributing for the purpose $3,600 and defendant $3,000; most of the latter sum she withdrew from an account which was then in her name as trustee

---

[6] As another indication of that attitude, they executed wills in which each left everything to the other.

for plaintiff. Accepting plaintiff's statement as true that all these moneys were his own, his testimony nevertheless leads to the firm conviction that he intended that the property should belong to himself and defendant equally,—in other words, that he was making her a gift to that extent. For example, in testifying as to his own contribution, he added that "That meant the house was belonged half to me and half to her". Even at the time of their final quarrel and his alleged ejectment from the property he said to her: "The agreement was the house belongs to me just the same as it does to you"; and that she had the same understanding appears from his statement that, on a former occasion, she had said to him: "that property is just the same, belongs to you just the same as it belongs to me". It is significant that he claims to have paid the taxes on the property only for the years 1942 and 1943; apparently for the preceding twelve years they were paid by defendant and she also paid for the more important repairs; these payments, incidentally, may account for some of the moneys she withdrew from the banks. The court below was not justified, therefore, in holding that plaintiff had established a resulting trust in his favor to the full extent of the title, for he proved himself entitled at best to only a half interest in the beneficial ownership.

Is plaintiff's claim, even as to such half share, barred by the Act of April 22, 1856, P. L. 532, §6, which provides that no action shall be maintained to enforce any implied or resulting trust as to realty but within five years after such trust accrued? Plaintiff was at all times in possession and, according to a well established rule, this prevented the limitation prescribed by the act from running against him and also refutes the charge of laches: *Christy v. Christy,* 353 Pa. 476, 46 A. 2d 169, and cases there cited. Nor is the rule different merely because defendant also lived in the property, their joint occupancy being akin to that of husband and wife and she apparently never challenging his one-half interest: *McLaughlin v. Fulton,* 104 Pa. 161, 171; *Miller v. Baker,* 160 Pa. 172, 28 A. 648; 166 Pa. 414, 31 A. 121.

. The situation is different with respect to the moneys withdrawn by defendant from the banks. It has already been pointed out that plaintiff's testimony would amply justify the conclusion that all the funds were to belong to the parties in equal shares just as in the case of the real estate, and, on that theory, the evidence does not reveal what, if any, amount would now be due to him, especially since the uses to which the withdrawals were applied are not disclosed. Be this as it may, all the withdrawals by defendant, with the exception of items aggregating $856.98, took place more than six years before the filing of the present bill, and, since equity acts in analogy to the statute of limitations and will not enforce a resulting or constructive trust beyond the time when recovery could have been had in an action at law, plaintiff is barred from relief: *Ashhurst's Appeal*, 60 Pa. 290, 316; *Evans's Appeal*, 81 Pa. 278, 301; *Shelley's Estate*, 287 Pa. 105, 113, 134 A. 468, 471. It is true that in cases of fraud the statute runs only from discovery or from the time when, with reasonable diligence, there ought to have been discovery, and if, by any act of concealment or deceit, the wrongdoer hides from the innocent party the facts which would have put him upon inquiry, the statute does not begin to run at all: *Deemer v. Weaver*, 324 Pa. 85, 187 A. 215; *Barr v. Luckenbill*, 351 Pa. 508, 41 A. 2d 627. Plaintiff charges that defendant made affirmative efforts to prevent his discovery of her withdrawals in that she kept all the bank books in a safe-deposit box in a trust company; he does not pretend, however, that he ever urged her to produce the books or that he insisted upon seeing them; he admits that he did in fact examine them in 1938, and, in any event, as all the funds were in their joint names, he could at any time, merely by inquiring at the banks, have ascertained how the accounts stood. As to the $856.98 withdrawn within the six years, it appears that, immediately prior to the filing of the bill, defendant paid him the much larger sum of $2,485, so that he is not now entitled to any additional recovery.

The record is remanded to the court below with directions to amend the decree by ordering defendant to convey to plaintiff a one-half right, title and interest in the premises 7741 Hasbrook Avenue, Philadelphia, free and clear of all mortgages and encumbrances, and by eliminating the order on defendant to pay plaintiff the sum of $6,559.18 or any part thereof; defendant to pay the costs.[7]

---

[7] The portion of the decree directing defendant to cause all moneys now remaining in the accounts to be transferred to plaintiff may be disregarded in view of the fact that such balances are trifling in amount.